Argued and submitted January 23, reversed and remanded for reconsideration
May 27, 1998

## JENNIFER A. SAROIAN,
*Appellant,*

*v.*

## STATE OF OREGON,
*Respondent.*

## (96C-11627; CA A96327)

961 P2d 252

D. Olcott Thompson argued the cause and filed the brief for appellant.

Hardy Myers, Attorney General, Michael D. Reynolds, Assistant Solicitor General, and David B. Thompson, Assistant Attorney General, filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Petitioner appeals from a judgment denying her petition for post-conviction relief in which she alleges that she was denied adequate assistance of counsel under Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. ORS 138.510 *et seq.* We review for errors of law, ORS 138.650; ORS 138.220, and reverse.

Petitioner's claim was submitted for purposes of trial on the affidavits and memoranda of the parties without any in-court testimony or evidence. Petitioner was charged with committing the offense of assault in the fourth degree. ORS 163.160. In her affidavit in this case, she averred that she had told her trial attorney how to contact Abrahams, an eyewitness to the events that led to the charge against her, and that she had explained to him that Abrahams "saw what really happened." When she arrived in court on the date set for trial, Abrahams was not present. Petitioner averred, "without [Abrahams] being there I felt like I had no chance." Faced with proceeding to trial on the Assault IV charge without her key witness, petitioner chose rather to accept the state's new offer of a plea bargain, first made on the day of trial. Accordingly, she pled guilty to the crime of harassment. ORS 166.065.

Petitioner also submitted Abrahams' affidavit, which stated that he was the alleged victim's babysitter, that he was an eyewitness to the events from which the assault charge arose, that he never spoke with the police and that petitioner's trial attorney never contacted him. His account of the incident varies significantly from that of the alleged victim's and of the other eyewitness whom the state intended to call. He says in his affidavit that the alleged victim came at petitioner to push her out a door. The affidavit continues, "[Petitioner], in an effort to protect herself, grabbed [the alleged victim] and push [*sic*] her to the ground. [Petitioner] may have slapped [the alleged victim] across her face, once."

In addition, the post-conviction relief court had before it the affidavit of petitioner's trial attorney,[1] the plea

---

[1] The affidavit states, in part:

petition, a tape recording of the hearing at which the plea occurred, police reports concerning the incident, the charging instrument, the judgment and an affidavit of the prosecuting attorney on the assault charge.[2] There is no evidence in the record that directly controverts petitioner's testimony that she was induced to enter into the plea bargain because of the failure of her counsel to procure Abrahams as a witness. The post-conviction relief court made no findings on the record to support the denial of petitioner's claim. Its letter opinion merely states: "The factual issues are resolved against petitioner as she has not sustained her burden of proof."

■ To prevail in a post-conviction proceeding on a claim of inadequate assistance of counsel, "[t]he burden is on petitioner to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Under the circumstances of this case, petitioner must prove by a preponderance of the evidence that her trial counsel's failure to subpoena Abrahams constituted constitutionally inadequate assistance of counsel and that she would not have pleaded guilty and would have insisted on going to trial had her trial counsel contacted and subpoenaed Abrahams as a witness. Where the post-conviction court fails to make express findings and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion made by court. *Chew v. State of Oregon*, 121 Or App 474, 476-77, 855 P2d 1120, *rev den* 318 Or 24 (1993). Here, there are no controverted facts

---

"[A]lthough I have no present recollection of the facts and circumstances surrounding this case, it is my practice in every criminal case to assist my clients in the thorough evaluation of the state's offer, answer any questions that they may have about such negotiations, encourage them to accept offers which I feel are generous in light of the facts of the case, and to support their decision to accept such offers when they make the decision to do so;

"That I am confident that I acted in accordance with my general practice in the petitioner's case and that the decision to plead guilty to the reduced charge of Harassment was made voluntarily and knowingly by the petitioner."

[2] That affidavit confirms that on the morning of the trial the state revised its original plea offer, that the offer was conveyed to defense counsel and that defense counsel reported that defendant had agreed to accept the offer.

about whether petitioner requested that Abrahams be procured as a witness or about what he would have testified to, if he had been called as a witness. What remains is the issue of whether the post-conviction court was legally correct when it ruled that petitioner had not met her burden of proof on this record.

■  The "exercise of reasonable professional skill and judgment generally requires an investigation that is legally and factually appropriate to the nature and complexity of the case so that the lawyer is equipped to advise and represent the client in an informed manner." *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). It is uncontradicted on this record that Abrahams was a material witness to the incident and that petitioner told her trial attorney about Abrahams, how to contact him and that his testimony would have supported her self-defense theory. Abrahams, in his affidavit, stated that petitioner's criminal trial attorney never contacted him. Petitioner's trial attorney does not deny those assertions. Based on those uncontroverted facts, we hold that petitioner carried her burden of proving a *prima facie* case that trial counsel failed to exercise reasonable professional skill and judgment by not contacting and subpoenaing Abrahams as a witness. If the post-conviction court's ruling was that petitioner failed to make out a *prima facie* case about inadequate assistance of counsel, it erred as a matter of law.

Next, petitioner states in her affidavit that she would have proceeded to trial on the Assault IV charge and would not have pleaded guilty to harassment if her attorney had called Abrahams to testify in her defense. The state argued in its memorandum to the post-conviction court:

"The affidavit of * * * trial counsel for petitioner, indicates that he has no present recollection of this specific case. But even assuming, arguendo, that he failed to contact the witness provided him by the petitioner, petitioner has not shown a prejudice sufficient to meet the standards set forth above. The police reports in the criminal matter, which were submitted as an exhibit by the petitioner, indicate that there were additional witnesses to the incident, the testimony of which would have been detrimental to the defendant and could reasonably have been expected to

result in a conviction for Assault IV. Moreover, the petitioner is unable to show by a preponderance of the evidence that a plea to a lesser charge of Harassment was to her detriment."

We understand that argument to assert that petitioner has not suffered prejudice by pleading guilty to harassment because she would have been found guilty of Assault IV anyway.

In *Long v. State of Oregon*, 130 Or App 198, 880 P2d 509 (1994), the petitioner sought post-conviction relief on the ground that he would not have accepted the state's plea offer if his attorney had not incorrectly advised him that his conviction could be expunged. The trial court denied his petition on the ground that the petitioner would ultimately have been convicted anyway, had he gone to trial instead of entering into a plea agreement. *Id.* at 200-01. It concluded, therefore, that the petitioner had suffered no prejudice. We reversed, holding that although the likelihood of a conviction may bear on whether he would have agreed to the plea bargain, "the critical issue is not whether petitioner could ultimately have been convicted, but whether he would otherwise have entered into the plea agreement." *Id.* at 204. To the extent that the post-conviction relief court's ruling in this case could be understood to hold that petitioner did not show any prejudice because she would have been convicted anyway, it would be error under our holding in *Long*.

In general, the "prejudice" requirement in a case involving a guilty or no contest plea focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, a petitioner under such circumstances must demonstrate "that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 US 52, 59, 106 S Ct 366, 88 L Ed 2d 203, 210 (1985); *see also Moen v. Peterson*, 312 Or 503, 513, 824 P2d 404 (1991) (holding that under ORS 138.530(1)(a), which directs a court to grant post conviction relief only when a "substantial denial" of rights occurs, the petitioner was required to show that, had he been

informed of the possibility of a minimum sentence, he would not have pleaded no contest).

However,

"[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. *For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence,* the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. *This assessment, in turn, will depend in large part on a prediction whether the evidence would have changed the outcome of a trial." Hill,* 474 US at 59 (emphasis supplied).

Thus, where the claim is that the alleged error of counsel was the failure to discover and call an exculpatory witness, "the likelihood of conviction may bear on whether petitioner would have agreed to the plea." *Long,* 130 Or App at 204.

In this case, we have already concluded that Abrahams was a material exculpatory witness, and we note that petitioner's testimony that she would not have gone to trial had he been available to testify is uncontroverted by any opposing affidavit. Abrahams' evidence would have supported petitioner's theory of the case that the alleged victim was the aggressor and that her actions were in self-defense.[3] Furthermore, Abrahams was the alleged victim's babysitter, and the post-conviction record contains no evidence that he was biased in favor of petitioner. In sum, there is no apparent reason why a jury could not have found Abrahams' testimony to be credible and weighed it with the other evidence to determine whether the state had proven petitioner guilty beyond a reasonable doubt. Accordingly, Abrahams' affidavit supports petitioner's averment that she would not have pled guilty if

---

[3] *See* ORS 161.209, which provides:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

he had been present and ready to testify on the date set for trial. Stated another way, it is reasonable to infer from the facts in this case that petitioner would have gone to trial on the Assault IV charge as she claims if she had an available witness whose testimony could exonerate her completely. It is also reasonable to infer that her guilty plea to a lesser charge was prompted because of the absence of her only exculpatory witness.

The state argues in its brief on appeal that the trial court was nevertheless not obliged to believe petitioner's affidavit:

> "Based on Abrahams' testimony, petitioner argued at the post-conviction hearing that, had Abrahams been subpoenaed to testify, petitioner would not have pleaded guilty to the lesser charge of harassment and instead would have proceeded to trial on the fourth-degree assault charge. * * * The post-conviction court, however, was not obliged to believe petitioner. *See James v. Cupp*, 5 Or App 181, 183, 482 P2d 543, *rev den* ____ Or ____ (1971) (the credibility of a witness, including petitioner, was an issue of fact to be determined by the post-conviction court). In concluding that petitioner failed to sustain her burden of proof, the post-conviction court implicitly found that petitioner's testimony was not credible[.]"

In other words, the state asserts on appeal that implicit in the trial court's ruling is that it did not believe petitioner when she averred that her guilty plea was caused by her trial attorney's failure to call Abrahams, and, therefore, that she did not demonstrate to the trial court's satisfaction that she had been prejudiced.

Initially, we note that *James*, the case relied on by the state, involved the in-court testimony of the petitioner at a post-conviction hearing where the trial court had the opportunity to assess credibility. 5 Or App at 182. Here, the court did not have that opportunity. Furthermore, the state offered no impeachment evidence and did not directly raise the issue of petitioner's credibility in its post-conviction memorandum to the trial court. Although petitioner's testimony about what she would have done had Abrahams been there to testify is self-serving, any inference from that fact does not in and of itself afford a basis to reject her affidavit. Otherwise, every

affidavit or sworn statement could be arbitrarily rejected as not credible. Rather, there must be something inherent in the affidavit itself, or when its contents are weighed with the other evidence, that could lead to a reasonable inference that it is not worthy of belief. Because Abrahams' testimony could have reasonably been expected to affect the outcome of a trial on an Assault IV charge for the reasons expressed above, the uncontradicted evidence offered by petitioner constitutes a *prima facie* showing of prejudice under the circumstances.

In summary, we hold that petitioner made a *prima facie* showing of inadequate assistance of counsel by establishing that she told her trial attorney about Abrahams, how to contact him and why contacting him was important to her defense and that her attorney failed to issue a subpoena for Abrahams' appearance at trial. The trial attorney's failure to procure Abrahams as a witness was not an adequate exercise of professional skill and judgment. Furthermore, we hold that petitioner made a *prima facie* showing that she would have proceeded to trial rather than pleading guilty to harassment had her attorney ensured that Abrahams was available to testify. On this record, we cannot tell what the post-conviction relief court meant when it ruled "that the factual issues are resolved against plaintiff" and that she did not carry her burden of proof. On remand, the court should reexamine the record in light of our holding in *Long* and the apparently uncontradicted testimony that she told her counsel about Abrahams and that she would not have pled guilty had Abrahams been available to testify.

Reversed and remanded for reconsideration.