Submitted on record and briefs June 4, affirmed September 9, 1998

EARL L. NEW,
*Appellant,*

*v.*

Nicholas ARMENAKIS,
Superintendent,
Oregon State Correctional Institution,
*Respondent.*

(96C-11595; CA A98314)

964 P2d 1101

Lester E. Seto filed the brief for appellant.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

### EDMONDS, J.

In this post-conviction relief proceeding, petitioner claims that his right to adequate assistance of counsel under the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, section 11, of the Oregon Constitution, was violated when petitioner's trial counsel failed to diligently and conscientiously exercise skill and professional judgment in the criminal proceedings that resulted in petitioner's convictions for burglary, menacing, kidnaping and sodomy. ORS 138.510 to ORS 138.685. In particular, petitioner claims that counsel failed to locate and present witnesses favorable to him at trial, although counsel knew of their existence. The post-conviction relief court held that petitioner had received adequate assistance of counsel at trial and that he was not entitled to post-conviction relief. We review for errors of law, ORS 138.220, and affirm.

The threshold issue in this case is whether petitioner's trial attorney knew about Rod Gable as a potential witness and sought to locate him. The post-conviction relief court found that "[p]etitioner was not able to provide trial counsel with an address or telephone number for Mr. Gable. Trial counsel attempted to locate Mr. Gable but could not find him." However, in the trial attorney's affidavit, counsel avers that "[petitioner] never mentioned Rod Gab[le] as a potential witness, and never discussed him with me. I am unaware of what information Mr. Gab[le] could provide as a witness in this case."

Petitioner testified:

"Q Did you suggest Mr. Gable as a witness to [counsel]?

"A Yes, and I think [counsel] was trying to locate him and just couldn't or something. Rod Gable's—you know, he's always around but it's hard to catch him. So I think—

"Q Okay. You didn't have an address for Mr. Gable—

"A No.

"Q —or a phone number where he could be found?

"A   No, my brother knows his address and stuff like that, and that's why I was hoping [counsel] was going to get ahold of my brother.

"Q   Did you tell [counsel] what you just told me, that Mr. Gable could have said these various things?

"A   Yeah.

"Q   Did [counsel] have any opinion on whether that would be helpful evidence?

"A   Well, uhm, I think—I think it went along—went along the line that he was going to—you know, if he could talk to him, he was going to try to talk to him. He seemed like he was always pretty busy to me, like he was—well, if he could get around he could locate Mr. Gable * * *."

■■   Whether a post-conviction relief court's finding is supported by the evidence is a question of law that is properly within our scope of review. *Moen v. Peterson*, 312 Or 503, 511, 824 P2d 404 (1991). Trial counsel testified that petitioner did not tell him about Gable. Petitioner testified that he informed trial counsel of Gable's existence. Accordingly, the post-conviction relief court's finding that trial counsel was not able to locate Gable is not supported by any evidence.

■   Given the error by the post-conviction relief court, we will assume, for purposes of this opinion only, that counsel failed to exercise reasonable professional skill and judgment in not locating Gable. However, petitioner must also show, "by a preponderance of the evidence, facts demonstrating that * * * [he] suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991) (citing ORS 138.620(2)). In the context of post-conviction relief, "prejudice" means that counsel's omissions had a tendency to affect the result of the prosecution. *Id.*

■   At trial, the victim testified to the following events. Petitioner, with whom she had previously cohabitated, was waiting for her one night as she arrived at her residence. She asked him to leave; he refused, and she went into the residence to obtain a gun in order to make him leave. Petitioner followed her into the residence and after a struggle, took the gun away from her. After a while, she and petitioner left the residence separately. After she returned to the residence,

petitioner also returned. He threatened her and her infant child with the gun and compelled her to perform oral sex. Then, he forced her to take him to her friend's residence for the purpose of robbing the friend. The victim escaped after petitioner fell asleep at the friend's residence. Petitioner denied to the police that he had committed any crimes against the victim and claimed her accusations were fabricated.

The defense offered the testimony of four witnesses at trial. Three of the witnesses saw petitioner and the victim together during the 48-hour period surrounding the events about which the victim testified. Those witnesses testified that they saw no indication by the victim of distress regarding petitioner.

The only evidence that the record discloses regarding what Gable could have testified about comes from petitioner's deposition:

"Q   And Rod Gable, what could he have testified to if you had had him at trial?

"A   Well, he's a good friend of mine and—well, he's a good friend of [the victim's] also, and he came up there I know of at least once with my brother.

"Q   Up where?

"A   Up to [the victim's] place.

"Q   Okay.

"A   And when I wasn't there, and it was my brother and Rod and [the victim].

"Q   Uh-huh.

"A   And of course my brother went up there to inquire where I was and everything like this, and I guess the conversation—you know, to them it seemed like, well, everything was okay between me and [the victim], you know, because they both went up there looking for me, and she told them that I was someplace else."

Petitioner's testimony is inadequate as a matter of law to prove by a preponderance of the evidence that he was prejudiced by his counsel's failure to locate Gable. According

to the testimony, Gable did not see petitioner and the victim together when the victim said the events occurred. More importantly, there is no evidence in the record about what Gable would have testified to, had he been called as a witness.

The point is illustrated by comparing the evidence in this case to the evidence in *Saroian v. State of Oregon*, 154 Or App 122, 961 P2d 252 (1998). In *Saroian,* the petitioner submitted an affidavit from an eyewitness who had not been called as a witness at trial. The affidavit by the eyewitness said that he was never contacted by trial counsel, and it included a description of what the witness would have testified to, had he been called as a witness at trial. 154 Or App at 114, 116. Without question, the testimony would have benefited the petitioner in that case because it corroborated the petitioner's position that she acted in self-defense.

In contrast, this record contains only a statement by petitioner of what was reported to him that took place when Gable and petitioner's brother went to the victim's residence at a time when petitioner was not there. Without an affidavit from Gable, there is no evidence about what Gable would have testified to, had he been called as a witness. In other words, it is unknown whether Gable's testimony would have been consistent with the report made to petitioner and whether it would have been favorable to him. Under the circumstances, we hold that petitioner has not carried his burden of proof that the failure to locate Gable prejudiced the outcome of the criminal trial against petitioner.

Petitioner raises two additional attacks on the post-conviction relief court's findings relating to the failure of counsel to ensure petitioner's brother's appearance at court and the failure to object to consecutive sentencing. As to those allegations, the record supports the court's findings and legal conclusions. Petitioner's remaining assignment of error does not require further discussion. Therefore, we conclude that the post-conviction relief court did not err in denying petitioner's petition for post-conviction relief.

Affirmed.