Argued and submitted January 30, 2001, affirmed February 13, 2002

# SHANNON RANDALL TUSH,
*Appellant,*

*v.*

# Joan PALMATEER,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

## 98C-17049; A108070

39 P3d 943

Elana D. Flynn argued the cause and filed the brief for appellant.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

## DEITS, C. J.

■    Petitioner appeals from a judgment denying his petition for post-conviction relief. ORS 138.510 to ORS 138.686. The issue on appeal is whether, under Article I, section 11, of the Oregon Constitution, petitioner received inadequate assistance of trial counsel.[1] We review to determine whether the facts found by the post-conviction court are supported by evidence in the record and whether its legal conclusions are correct, *Austin v. McGee*, 140 Or App 263, 265, 915 P2d 1027 (1996), and affirm.

After an incident during which petitioner reportedly attacked the victim with a knife, petitioner was indicted for and tried on one count of first-degree assault, ORS 163.185,[2] and two counts of second-degree assault, ORS 163.175.[3] Petitioner was also indicted for one count of unlawful use of a weapon, ORS 166.220, but that count was ultimately dismissed on the state's motion. Petitioner was convicted of the two counts of second-degree assault and, according to the judgment of conviction, the count of first-degree assault was dismissed on the state's motion when the jury could not agree on a verdict. He appealed, and we affirmed. *State v. Tush*, 151 Or App 805, 960 P2d 394 (1997), *rev den* 326 Or 530 (1998).

---

[1] Article I, section 11, of the Oregon Constitution, provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]" In petitioner's brief, he states that, before the post-conviction court, he argued that he had been denied effective assistance of counsel as guaranteed by the federal and state constitutions but that, "[i]n this appeal, [he] relies only on the Oregon Constitution."

[2] ORS 163.185 provides, in part:

"(1) A person commits the crime of assault in the first degree if the person intentionally causes serious physical injury to another by means of a deadly or dangerous weapon."

[3] ORS 163.175, provides, in part:

"(1) A person commits the crime of assault in the second degree if the person:

"* * * * *

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life."

In petitioner's second amended petition for post-conviction relief, he alleges that "trial counsel failed to exercise reasonable professional skill and judgment and [p]etitioner suffered prejudice as a result." Specifically, petitioner alleges, in part:

"As required by ORS 161.309(2) & (3), trial counsel failed to timely file a notice of intent to introduce in the case in chief expert testimony regarding partial responsibility under ORS 161.300 (that petitioner suffered from a mental disease or defect which prevented him from forming the intent necessary to be convicted of Assault Two, ORS 163.175)."[4]

The post-conviction court found: "Petitioner's chief complaint is that his trial counsel failed to file a timely notice of his intent to rely on [a] partial responsibility defense, thus precluding him from offering Dr. Colby's testimony at trial." The court further found that, if Colby, a psychologist, had been allowed to testify, his testimony would have provided that petitioner "may have suffered from a mental disease at the time he committed the assault (Post-Traumatic Stress Disorder) [(PTSD)] which impaired his ability to form the intent to commit the crimes." The post-conviction court explained that Colby

"testified in this proceeding he was not certain whether petitioner suffered from [PTSD] prior to his assault on the victim. * * * Colby was unable to corroborate petitioner's reports of childhood abuse, which in petitioner's case would

---

[4] ORS 161.300 provides:

"Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime."

ORS 161.309 provides, in part:

"(2) The defendant may not introduce in the case in chief expert testimony regarding partial responsibility under ORS 161.300 unless the defendant gives notice of intent to do so in the manner provided in subsection (3) of this section.

"(3) A defendant who is required under subsection * * * (2) of this section to give notice shall file a written notice of purpose at the time the defendant pleads not guilty. The defendant may file such notice at any time after the plea but before trial when just cause for failure to file the notice at the time of making the plea is made to appear to the satisfaction of the court. If the defendant fails to file notice, the defendant shall not be entitled to introduce evidence for the establishment of a defense under ORS * * * 161.300 unless the court, in its discretion, permits such evidence to be introduced where just cause for failure to file the notice is made to appear."

have been necessary for a diagnosis of [PTSD]. * * * Colby knew that petitioner's mother had not corroborated petitioner's reports of childhood abuse. In order for the jury to believe that petitioner had [PTSD] prior to the assault, it would have to find that petitioner had been abused as a child.

"* * * * *

"* * * In the absence of a clear diagnosis of [PTSD], and no corroborating evidence of a childhood event to cause it, the likelihood that * * * Colby could have convinced the jury that petitioner had [PTSD] was almost non-existent."

Based on those facts, the post-conviction court concluded that, because "[t]rial counsel's failure to timely notify the court of his intent to rely on a partial responsibility defense was not so serious as to deprive petitioner of a fair trial, a trial whose result is reliable[,]" petitioner had not been denied the right to adequate assistance of counsel under the Oregon Constitution.

■     "To be entitled to post-conviction relief on the basis of inadequate assistance of counsel, a petitioner must show, 'by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result.'" *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995) (quoting *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991)). Prejudice results from acts or omissions that have a tendency to affect the result of the criminal prosecution. *Id.* at 110 n 5. In this appeal, the determinative issue, and the only one that we address, is whether petitioner was prejudiced by trial counsel's failure to file timely notice of his intent to rely on a partial responsibility defense. Thus, we turn to that issue.

■     Petitioner argues that the post-conviction court applied the wrong standard for determining whether he was prejudiced when it required that he prove not only that the omission had a tendency to affect the result but also that the error was so serious as to deprive him of a fair trial.[5] Petitioner asserts that, had the post-conviction court applied the

_____

[5] As petitioner points out, there is some confusing language in the post-conviction court's letter opinion. The court reasoned, in part:

correct standard, he would have been entitled to post-conviction relief because trial counsel's failure to file timely notice of his intent to rely on a partial responsibility defense had a tendency to affect the outcome of the trial. Petitioner's theory is that, if the notice had been timely filed, Colby would have testified that "[p]etitioner 'may' suffer from [PTSD], and thus only 'might' not have formed the intent necessary to commit the crimes," that "Colby's testimony would have been admissible under the rules of evidence," and that Colby's testimony would have "backed up [p]etitioner's story as to his mental condition and given some evidence for the jury to find [p]etitioner did not have the required culpable [mental] state."

The state counters that, "even assuming that 'tendency to affect' is a less rigorous standard than a mistake 'so serious as to deprive petitioner of a fair trial[,]' * * * trial counsel's failure to give timely notice that he intended to use * * * Colby's testimony could not have had a tendency to affect petitioner's case." According to the state, "[w]ithout a diagnosis that petitioner actually 'suffered from a mental disease or defect' as required by ORS 161.300, trial counsel could not have presented a credible defense of partial responsibility based on PTSD even if he had timely filed [a] notice of intent to rely on that defense." (Footnote omitted.) Specifically, the state asserts that, "[a]lthough trial counsel failed to exercise reasonable professional skill and judgment when he did not timely file the required notice, petitioner's case was not prejudiced by that failure" because Colby "did not diagnose petitioner as suffering from chronic [PTSD]" and "without a diagnosis that petitioner 'suffered from a mental disease or defect' as required by ORS 161.300, * * * Colby's testimony would be irrelevant."

---

"Certainly counsel's failure to file timely notice 'tended to affect the outcome' of petitioner's case because if the jury believed that petitioner had PTSD, the element of intent would have been missing."

Viewed in context, it appears that the court's comment was not intended to conclude that counsel was constitutionally inadequate; rather, it appears that the comment was a part of the court's discussion concerning the legal standard for determining prejudice. In any event, as we will discuss, no matter what the legal standard for determining prejudice, petitioner was not prejudiced as a matter of law. Thus, the court's comments do not make a difference.

There is no need for us to resolve petitioner's argument that the post-conviction court applied an incorrect legal standard. We have reviewed the evidence in the record concerning Colby's opinions. In sum, and consistently with the post-conviction court's findings, we conclude that Colby would have testified that: (1) at the time of the assault, petitioner may have suffered from PTSD that impaired his ability to form the intent necessary to commit the crimes, and (2) Colby could not reliably diagnose petitioner with PTSD without additional information to corroborate his account of an abusive childhood.

■      For reasons we will explain, we hold that Colby's testimony would have been inadmissible. Thus, regardless of the legal standard for determining prejudice, the exclusion of Colby's testimony could not have affected the result of petitioner's trial. Our decision in *State v. Ogden*, 168 Or App 249, 6 P3d 1110, *on recons* 169 Or App 469, 6 P3d 1109 (2000), *rev den* 331 Or 692 (2001), illustrates the reasoning underlying our conclusion. In *Ogden*,

"defendant contended that complainant's testimony regarding his abusive conduct was belied by her own behavior. Specifically, complainant continued to have sexual relations with defendant and to meet with him socially throughout the period encompassing the conduct for which he is charged. Because, in defendant's view, no one would remain in a relationship as abusive as the one described by complainant, evidence that she continued to see him suggests that she was not truthful about his conduct during that same period." 168 Or App at 254.

In response, "[t]he state offered expert testimony regarding the behavior of women in abusive relationships to rebut defendant's challenge to complainant's credibility." *Id.* "[T]he expert's testimony was not offered to show that complainant suffered from battered women syndrome; rather, it was offered to buttress complainant's credibility by providing an alternative explanation for her behavior." *Id.* at 255. The trial court overruled the defendant's objection that the expert's testimony was irrelevant because there was no evidence that the complainant suffered from battered women syndrome.

On appeal in *Ogden*, we reversed the trial court and held that the evidence was irrelevant. We cited OEC 401, which provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We explained that we agreed with the state that,

> "in a case such as this, evidence regarding BWS could be highly relevant. However, at trial, the state failed to establish a critical link between the expert's testimony about why a battered woman might choose to remain in an abusive relationship and why this complainant did so. Specifically, the state did not establish that complainant suffers from BWS. If complainant does not suffer from BWS, then testimony about that subject seemingly has no bearing on complainant's behavior." *Ogden*, 168 Or App at 256.

This case presents similar circumstances. Petitioner asserts that, if his trial counsel had filed timely notice of his intent to rely on the partial responsibility defense, Colby's testimony would have provided that "[p]etitioner 'may' suffer from [PTSD], and thus only 'might' not have formed the intent necessary to commit the crimes" and that Colby's testimony would have supported petitioner's testimony. In other words, in petitioner's view, Colby's testimony would have been relevant to the issue of whether petitioner lacked the necessary criminal intent. Under the circumstances of this case, however, the critical link between the testimony that Colby would have given concerning the ability of a person with PTSD to form the intent to commit the crime at issue in this case and petitioner's intent is missing because Colby did not diagnose petitioner as having PTSD. Thus, as in *Ogden*, the testimony is irrelevant.

Additionally, the post-conviction court found that Colby "was unable to corroborate petitioner's reports of childhood abuse, which in petitioner's case would have been necessary for a diagnosis of" PTSD and that "[p]etitioner did not present credible evidence in this proceeding that might have corroborated an assertion [that] he had been abused as a child if that evidence had been presented in the underlying trial." According to petitioner,

"[i]t was observed at the post[-]conviction trial that * * * Colby could not verify whether [p]etitioner had been abused. * * * However, that is really inconsequential because [p]etitioner asserts that the crucial point is that * * * Colby could testify that at least [p]etitioner might suffer from a psychological disorder, which would have backed up his story, and at least * * * Colby could not definitely say that [p]etitioner had not been abused."

To the extent that petitioner is arguing that no diagnosis of PTSD was necessary and that the jury could decide how to use Colby's testimony without the benefit of his diagnosis, we disagree. In *Ogden*, we noted that BWS is a diagnosis and reasoned, in part:

"Implicit in the state's argument is the idea that the jury, having heard evidence of abuse and expert testimony about BWS, can reasonably deduce that complainant behaved as a battered woman. In other words, the jury can diagnose BWS. We reject that proposition. A diagnosis of BWS is scientific evidence that requires expert testimony.[6] Typically, the jury is free to accept or reject an expert's diagnosis; but we hold that the diagnosis—in this case, that complainant suffers from BWS—is a predicate to the admissibility of evidence about BWS and behavior attributable to BWS." 168 Or App at 257 (citation omitted).

Consequently, because Colby's testimony was inadmissible, counsel's failure to give timely notice under ORS 161.309 did not prejudice petitioner. The post-conviction court did not err in denying petitioner's petition for post-conviction relief.

Affirmed.

---

[6] *See also State v. Sanchez-Cruz*, 177 Or App 332, 341, 33 P3d 1037 (2001) (reasoning that, under *Jennings v. Baxter Healthcare Corp.*, 331 Or 285, 14 P3d 596 (2000), "a medical diagnosis is scientific evidence"; thus, "a diagnosis of child sexual abuse is 'scientific' evidence").