Argued and submitted March 3, affirmed October 13, 2004

JOSHUA EARL SHORT,
*Appellant,*

*v.*

Jean HILL,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

CV99-1375; A116372

99 P3d 311

Leland R. Berger argued the cause and filed the brief for appellant.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong, Judge, and Kantor, Judge pro tempore.

KANTOR, J. pro tempore.

## KANTOR, J. pro tempore

Petitioner appeals from a judgment denying his petition for post-conviction relief. Petitioner argued that his representation at his underlying burglary trial was constitutionally defective because his trial counsel, among other things, failed to introduce expert testimony to corroborate his assertion that, because he was suffering from methamphetamine withdrawal, he was unable to form the requisite criminal intent. At the post-conviction hearing, he introduced an affidavit from a psychiatrist generally stating that cessation of methamphetamine use could cause a person to be unable to form the intent to commit a crime. The post-conviction court held that petitioner had failed to show either that his trial counsel's performance was inadequate or that he was prejudiced by counsel's performance. We review to determine whether the facts found by the post-conviction court are supported by evidence in the record and whether its legal conclusions are correct. *Austin v. McGee*, 140 Or App 263, 265, 915 P2d 1027 (1996). We affirm.

Petitioner was charged with burglary in the first degree after he entered his mother's home with a shotgun and threatened to kill another occupant.[1] Before trial, petitioner told his trial counsel that he earlier had been using methamphetamine but had stopped three days before the incident. They discussed at length whether the effects of petitioner's withdrawal could constitute a defense with respect to petitioner's ability to form the requisite intent to commit burglary.[2] After researching the question, counsel concluded that no statutory or case law would support the theory that methamphetamine withdrawal could affect the ability to

---

[1] Petitioner also was charged with and convicted of one count of unlawful possession of a short-barreled shotgun, two counts of unlawful use of a weapon, and two counts of felon in possession of a firearm. Petitioner did not challenge those convictions at the post-conviction hearing and, therefore, they are not at issue in this appeal.

[2] ORS 164.225(1) provides, in part, that a person commits first-degree burglary if he or she violates ORS 164.215 and, "in effecting entry or while in a building or in immediate flight therefrom," the person uses or threatens to use a dangerous weapon. ORS 164.215(1) provides that a person commits second-degree burglary "if the person enters or remains unlawfully in a building *with intent to commit a crime therein*." (Emphasis added.)

form specific intent. Accordingly, he decided not to attempt to locate an expert who could testify about the effects of methamphetamine withdrawal. Instead, counsel decided to rely on petitioner's testimony at trial as to what was going through his mind while he was at his mother's home.

At the criminal trial, petitioner repeated his assertion that he had not used methamphetamine for three days before the date in question. Counsel asked him whether not using the drug had any effect on him. Petitioner replied:

> "Well, yeah. When I wouldn't do meth, I mean, of course, you know, there was a couple of times where I wasn't able to get to it to where I could do it, and I would just—my brain felt like it was just not there. I mean, I could think about things but it was just that. If I didn't do them right then, they didn't get done."

Petitioner did not state how long he had been using the drug before stopping or what quantities he had used.

The jury found defendant guilty, and the trial court entered a judgment of conviction. We affirmed the conviction without opinion on direct appeal. *State v. Short*, 154 Or App 727, 960 P2d 398 (1998).

Petitioner filed a petition for post-conviction relief in which he claimed that he had received inadequate assistance of counsel in violation of the state and federal constitutions.[3] At the post-conviction hearing, he challenged his trial counsel's belief that no statutory or case law would support the theory about the effect of methamphetamine withdrawal. Petitioner cited ORS 161.125(1), which provides, in part, that "evidence that the defendant used drugs or controlled substances, or was dependent on drugs or controlled substances, or was intoxicated may be offered by the defendant whenever it is relevant to negative an element of the crime charged." He argued that that statute provided a basis for asserting at his criminal trial that his drug withdrawal was relevant to negate the element of intent required by ORS 164.215(1). In

---

[3] Article I, section 11, of the Oregon Constitution provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]" The Sixth Amendment to the United States Constitution provides, in part, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

support of his claim that counsel's performance was deficient, petitioner submitted the affidavits of three criminal defense attorneys, each of whom stated that he would have investigated the availability of expert opinion evidence to corroborate petitioner's contention and would have presented that evidence at trial.

Petitioner also introduced the affidavit of Dr. Jerry Larsen, who is the medical director of a drug rehabilitation program and an associate clinical professor of psychiatry. According to the affidavit, Larsen had testified as an expert witness in other trials and was "familiar with methamphetamine addiction and mental conditions associated with the cessation of use and withdrawal from this particular drug." The affidavit continued:

> "4. I have spoken with petitioner's counsel about the facts of petitioner's case and make these representations based on that conversation. Specifically, as I understand it, petitioner was charged with Burglary and other crimes arising out of an unpermitted entry into his mother's home and the unlawful use of a weapon in intimidating a man who resided at his mother's home. I also understand that petitioner claimed that he was, at the time of the offense, in the throes of methamphetamine withdrawal and that as a consequence of the withdrawal he claimed he was unable to form the intent to commit the crimes charged. I further understand that petitioner's trial counsel neither made any effort to investigate into the availability of an expert to testify in support of petitioner's defense nor presented such expert testimony at trial.

> "5. Assuming review of the materials and conferring with petitioner otherwise bore out the factual basis for his claim, if requested by his counsel, I would have prepared and testified how cessation of methamphetamine use could cause a person to be unable to form the intent to commit crime or to render a person unable to understand the consequences of his behavior."

Petitioner offered no other pertinent evidence.

The post-conviction court concluded that the affidavits from the three attorneys were not helpful in determining whether petitioner's trial counsel's performance was within the realm of reasonable professional judgment. It stated that,

although their affidavits showed that they would have investigated the issue, none of the attorneys had related a belief that the drug withdrawal issue might have changed the outcome of the trial. In addition, the court found that Larsen's affidavit did not establish that petitioner was incapable of forming specific intent. It concluded both that the performance of petitioner's trial counsel had not been deficient and that petitioner had failed to prove that he had suffered any prejudice. The court denied the petition for relief.

On appeal, petitioner renews his argument that his trial counsel failed to exercise reasonable professional skill by failing to be aware of and rely on ORS 161.125. He contends that that failure led to counsel's decision not to investigate the availability of expert testimony. Petitioner asserts that counsel's decision resulted in prejudice because, in his view, Larsen's testimony would have corroborated his claim that he could not form the requisite specific intent. Defendant responds first that petitioner failed to show that his counsel's performance was deficient; according to defendant, counsel made a reasonable tactical decision not to pursue a diminished capacity defense. Defendant focuses on the issue of prejudice and contends that the post-conviction court could not tell whether Larsen's proposed testimony would have been useful or relevant had it been presented at petitioner's criminal trial.

To prevail in a claim for post-conviction relief on the basis of inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, a petitioner must show, by a preponderance of the evidence, that his or her counsel did not exercise reasonable professional judgment or skill and that the petitioner suffered prejudice as a result. *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). To establish a violation of the Sixth Amendment to the United States Constitution, a petitioner must prove that counsel's representation fell below an objective standard of reasonableness and that counsel's performance prejudiced the defense. *Strickland v. Washington*, 466 US 668, 687-88, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

We begin with petitioner's claim under Article I, section 11. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316

(1983) (stating that issues arising under state law are analyzed before federal questions). We need not consider whether petitioner's trial counsel's performance was constitutionally adequate. Assuming, without deciding, that it was not, we agree with defendant that petitioner failed to show that he suffered prejudice.

■■ To establish prejudice, a petitioner must show that his or her trial counsel's deficiency had a tendency to affect the verdict. *Stevens*, 322 Or at 110 n 5. Where, as here, the petitioner claims that counsel was deficient by failing to investigate, in order to show prejudice, the petitioner must adduce evidence at the post-conviction hearing that would have been discovered and introduced at the criminal trial had trial counsel undertaken the proposed investigation. *See Horn v. Hill*, 180 Or App 139, 148-49, 41 P3d 1127 (2002) ("Where evidence omitted from a criminal trial is not produced in a post-conviction proceeding, or the evidence could not have changed the result of the prosecution, its omission cannot be prejudicial."). Petitioner contends that Larsen's affidavit shows that, had he testified at the criminal trial, the jury would have been more likely to accept petitioner's claim that he could not form the requisite criminal intent, thereby demonstrating prejudice.

We note at the outset that petitioner's argument requires the assumption that the inability to form specific intent as a result of methamphetamine withdrawal is not a specific psychiatric disorder that requires expert diagnosis. If it is such a disorder, then petitioner's argument is likely foreclosed by *Tush v. Palmateer*, 179 Or App 434, 39 P3d 943 (2002), and *State v. Ogden*, 168 Or App 249, 254, 6 P3d 1110, *adh'd to as modified on recons*, 169 Or App 469, 6 P3d 1109 (2000), *rev den*, 331 Or 692 (2001). In each of those cases, expert testimony regarding the effects of a specific psychiatric disorder was offered to explain the behavior of a person who had not been diagnosed as having the disorder. We held that testimony regarding the effects of the disorder was irrelevant because, without an expert diagnosis, the jury was not qualified to determine whether the person actually suffered from the disorder. *Tush*, 179 Or App at 441-42; *Ogden*, 168 Or App at 256-57. In this case, although Larsen's affidavit

shows that some people undergoing methamphetamine withdrawal are unable to form specific intent, nothing in the affidavit shows that he would have been able to testify that petitioner was one of those people. Thus, if expert diagnosis is required, Larsen's proposed testimony would have been inadmissible and, therefore, could not have affected the verdict.

We need not determine whether expert diagnosis is required in this case, however, because we conclude that, even if it is *not* required, petitioner failed to show that Larsen's testimony would have had a tendency to affect the outcome of the case. Moreover, defendant does not argue that inability to form specific intent as a result of methamphetamine withdrawal is a specific disorder that requires expert diagnosis. Thus, for present purposes, we assume that the condition does not require expert diagnosis, but we express no opinion as to whether it does.

For the jury to have inferred that petitioner was unable to form specific intent, it would have had to believe that his withdrawal was severe enough to cause that effect. Petitioner's argument founders because the record fails to establish either (1) how severe the methamphetamine withdrawal must be to impair the ability to form intent or (2) how severe petitioner's withdrawal actually was. At most, the record shows that petitioner had earlier used methamphetamine but had stopped three days before the incident in question; that, at that time, he was "in the throes of" withdrawal; that, when he could not obtain methamphetamine, petitioner lacked the ability to carry out ideas if he "didn't do them right then"; and that withdrawal could cause a person to be unable to form the intent to commit crime. Although Larsen presumably would have related additional details at trial about the link between withdrawal and impaired ability to form intent and would have established some criteria for determining whether a person was so impaired, we have no way of knowing whether those details would have been helpful to petitioner's position.[4] *See Bennett v. Maass*, 131 Or App 557, 559-60, 886 P2d 1043 (1994), *rev den*, 321 Or 47 (1995) (stating

---

[4] If we were to grant petitioner a new trial, it is possible that Larsen would testify, for example, that the ability to form intent normally returns within two days after the user stops consuming the drug. Without knowing more about the contents of his proposed testimony, we can only speculate that it would support petitioner's case.

that a post-conviction petitioner must explain what scientific evidence his trial counsel failed to investigate and how that failure affected the trial).

Moreover, the details about petitioner's particular circumstances suffer from a similar paucity of evidence. Petitioner did not state how long he had been using methamphetamine before stopping or in what quantities. Nor did he explain what he meant by "right then" when he stated, "If I didn't do [things] right then, they didn't get done." If "right then" meant, for example, within a few minutes, that may be sufficient time to carry out a criminal intent. Petitioner does not argue on post-conviction that he would have offered more evidence about his drug use or the actual effects of his withdrawal. Without more information, we cannot say that petitioner's circumstances would have met whatever criteria Larsen may have established.

In short, Larsen's affidavit did not establish that his proposed testimony necessarily would have corroborated petitioner's assertion that he was unable to form specific intent. *Cf. New v. Armenakis*, 156 Or App 24, 964 P2d 1101 (1998), *rev den*, 328 Or 594 (1999) (holding that, where the substance of an omitted witness's testimony was not established in the post-conviction proceeding through admissible evidence, and the petitioner's recital of the witness's expected testimony demonstrated that it would not, in any event, have corroborated the petitioner's defense in the underlying prosecution, the omission did not prejudice the petitioner). Although Larsen might have given testimony that would have had a tendency to affect the outcome of the case, petitioner failed to prove by a preponderance of the evidence that he *would* have given such testimony. Accordingly, petitioner failed to show that he suffered prejudice as a result of his trial counsel's decision not to investigate the availability of expert testimony such as Larsen's. It follows that petitioner's claim of inadequate assistance fails under Article I, section 11. For the same reason, we conclude that his claim also fails under the Sixth Amendment. It follows that the post-conviction court did not err in denying petitioner's petition for relief.

Affirmed.