810 September 5, 2024 No. 644

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

RODERICK DOLAN THARP,
*Petitioner-Appellant,*

*v.*

Sue WASHBURN,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
18CV55110; A174187

J. Burdette Pratt, Senior Judge.

Argued and submitted March 11, 2022.

Jason Weber argued the cause for appellant. Also on the brief was O'Connor Weber LLC.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Hellman, J., concurring, in which Ortega, P. J., joined.

Affirmed.

**HELLMAN, J.**

Petitioner appeals from a judgment denying him post-conviction relief. We understand petitioner to argue that the post-conviction court erred when it denied his claim that trial counsel was inadequate and ineffective for not triggering the trial court's authority under ORS 161.365 to evaluate petitioner's fitness to proceed. We conclude that the post-conviction court did not err when it determined that trial counsel's representation was not constitutionally deficient. Our conclusion rests on the narrow definition of competency, as laid out in ORS 161.360 to ORS 161.370. We therefore do not reach petitioner's argument that the post-conviction court used the wrong legal standard to analyze the question of prejudice.

"A post-conviction court's findings of historical fact are binding on this court if there is evidence in the record that supports them." *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistently with the post-conviction court's conclusions of law." *Id.* We recite the facts as found by the post-conviction court, when supported in the record, and supplement them with facts from the record where appropriate.

In February 2018, petitioner held up a convenience store with a knife, with the express purpose of getting arrested. After stealing a beer and four $20 bills, petitioner threw the knife and the stolen money in a garbage can outside of the store and drank the beer while waiting for police at the scene. Upon their arrival, he quickly surrendered and admitted to what he had done, and police retrieved the knife and money from the garbage can. Petitioner was charged with first-degree robbery, unlawful use of a weapon, and third-degree theft.

Trial counsel met with petitioner multiple times. During the first meeting, petitioner was "able to track along with the conversation and presented information in a lucid manner." Petitioner discussed his history of mental health

issues in detail. He informed trial counsel that his priority was to resolve the case as quickly as possible, explaining that he was not interested in delaying the case in order for trial counsel to compile mitigation evidence or explore a mental health defense, because "he found it difficult to survive outside of prison and wished to return." When trial counsel explained that petitioner's presumptive mandatory minimum sentence was 90 months, petitioner replied that he wanted to serve the presumptive sentence.

During trial counsel's second meeting with petitioner, he found petitioner's recollection of the incident to be consistent with the police reports and thought that petitioner had great insight into his mental health issues. Petitioner informed trial counsel that he was not symptomatic at the present time, and trial counsel found no reason to disagree. After discussing the negotiation process, petitioner gave trial counsel authority to propose a 70-month sentence rather than the 90-month sentence. Trial counsel proposed 70 months and the state accepted the proposal. Then, at a third meeting, when trial counsel informed petitioner that the state had accepted his 70-month offer, petitioner told trial counsel that he wanted to take the case to trial because he wanted to serve more than 70 months in prison. He again discussed that he could not find employment outside of prison or gain any sort of stability, explaining that he wanted to obtain employment while incarcerated and save money before release.

On the day of the Final Resolution Conference, petitioner maintained to trial counsel that he wanted a sentence that was longer than 70 months. The state offered 90 months, and petitioner agreed. Trial counsel found petitioner's desire to do as much prison time as possible to be "unusual," but did not believe that petitioner lacked competency at the time. Trial counsel provided the court with a signed petition to enter a guilty plea, including a recommendation that the court impose 90 months. Before petitioner entered his plea, the trial court asked petitioner basic questions to determine if the plea was knowing, voluntary, and intelligent. The court then accepted petitioner's plea and sentenced him to 90 months imprisonment.

Petitioner filed a *pro se* petition for post-conviction relief in November 2018. Through counsel, petitioner filed an amended petition in July 2019, asserting that "[t]rial counsel exercising reasonable professional skill and judgment would have recognized that petitioner was not mentally sound to enter into any sort of plea agreement and proceeded with getting his client evaluated for his fitness to proceed pursuant to the statutes contained within ORS chapter 161." At the post-conviction hearing, declarations from petitioner and trial counsel were admitted. The post-conviction court found petitioner's statements not credible and trial counsel's statements credible. The court explained that "[Petitioner's] statement that he was suffering from paranoid delusions at the time of the crime is inconsistent with the police reports, his statements to his attorney and his statements to the court." The post-conviction court concluded that petitioner did not prove that trial counsel "failed to exercise reasonable professional skill and judgment in failing to obtain a mental health aid and assist evaluation prior to Petitioner's entry of plea" and that petitioner did not prove that he "did not knowingly, intelligently, and voluntarily plead guilty." The court additionally concluded that petitioner failed to show prejudice.

A petitioner claiming inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution has the burden "to show, by a preponderance of the evidence, facts demonstrating [1)] that trial counsel failed to exercise reasonable professional skill and judgment and [2)] that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991) (en banc). Under the federal standard, a petitioner is required to show that counsel's representation fell below an objective standard of reasonableness and that, as a result, petitioner was prejudiced. *Strickland v. Washington*, 466 US 668, 688, 104 S Ct 2052, 80 L Ed 2d 674 (1984). As the Supreme Court has recognized, those standards are "functionally equivalent." *Montez v. Czerniak*, 355 Or 1, 6-8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

We begin by resolving a dispute between the parties about the scope of petitioner's claim because the resolution

to that question dictates the result in this case. On appeal, petitioner asserts that trial counsel was inadequate and ineffective for failing to have petitioner evaluated by a mental health professional or to utilize ORS 161.365. The superintendent challenges that characterization as too expansive, noting that, before the post-conviction court, petitioner confined his claim to trial counsel's failure to seek an aid and assist evaluation under the statute. We agree with the superintendent. In the post-conviction court, petitioner did not raise a claim that trial counsel was ineffective for failing to seek a mental health evaluation in general. Instead, petitioner tied his claim to trial counsel's failure to seek an aid and assist evaluation under ORS 161.365. We thus focus on whether trial counsel was inadequate and ineffective for not triggering the court's authority under ORS 161.365 to evaluate petitioner's fitness to proceed after petitioner rejected the negotiated 70-month plea and sought the maximum penalty.

Whether a defendant is fit to proceed implicates ORS 161.360 to ORS 161.370 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution (due process clause).[1] *Oregon State Hospital v. Butts*, 358 Or 49, 57, 359 P3d 1187 (2015) (en banc) (explaining that the Oregon legislature enacted ORS 161.360 to ORS 161.370 to govern a defendant's competence to stand trial in 1971); *State v. Simon*, 294 Or App 840, 863, 865 433 P3d 385 (2018), *rev den*, 365 Or 502 (2019) (explaining that the minimum competency standard required by federal due process for every criminal defendant is governed by *Dusky v. United States*, 362 US 402, 80 S Ct 788, 4 L Ed 2d 824 (1960), and

---

[1] The three statutes governing the process for determining a defendant's fitness to proceed by reason of incapacity have been amended since the trial court issued its April 2018 ruling. *See* ORS 161.360 (2017), *amended by* Or Laws 2021, ch 97, § 16; ORS 161.365 (2018), *amended by* Or Laws 2019, ch 311, § 4; Or Laws 2019, ch 538, § 1a; Or Laws 2019, ch 318, § 1; Or Laws 2021, ch 395, § 6; Or Laws 2023, ch 281, § 43; ORS 161.370 (2018), *amended by* Or Laws 2019, ch 311, § 5; Or Laws 2019, ch 538, § 2a; Or Laws 2019, ch 318, § 2; Or Laws 2021, ch 395, § 7; Or Laws 2023, ch 227, § 2. We analyze the question on appeal under the versions of the statutes that were in effect at the time of the trial court's ruling in April 2018, and all subsequent references are to those versions of the statutes. *See Barnes v. City of Portland*, 120 Or App 24, 27, 852 P2d 265 (1993) ("Unless the legislature expressly provides that a statute applies retroactively, the general rule is that the rights and liabilities of a person who is affected by an event are defined and measured by the statutes in effect at the time of the event.").

that the Oregon statutory standard "implies the same [minimum competency] standard").

Under the Oregon legal framework, "capacity"/ "competence"/"fitness," as it may be invariably called, is "determined by a statutory standard involving the ability to understand and assist." *State v. Ryan*, 305 Or App 750, 768, 769, 770 473 P3d 90 (2020). ORS 161.360 to 161.370 "outline the procedures for a court to follow when a defendant's fitness to proceed has been brought into question." *State v. Heriman*, 331 Or App 477, 478, 546 P3d 305 (2024).

ORS 161.360 (2018) provides:

"(1)   If, before or during the trial in any criminal case, the court has reason to doubt the defendant's fitness to proceed by reason of incapacity, the court may order an examination in the manner provided in ORS 161.365.

"(2)   A defendant may be found incapacitated if, as a result of a qualifying mental disorder, the defendant is unable:

"(a)   To understand the nature of the proceedings against the defendant;

"(b)   To assist and cooperate with the counsel of the defendant; or

"(c)   To participate in the defense of the defendant."

*See also Simon*, 294 Or App at 864-65 (explaining that "although the 'level of competency' required under *Dusky* does not vary with the stage of the criminal proceeding involved, the defendant's abilities must be evaluated 'in light of the type of participation required' at a particular stage"). Under ORS 161.365(1)(a) (2018), when a court has "reason to doubt the defendant's fitness to proceed by reason of incapacity," it may call "any witness to its assistance in reaching its decision"; shall "order that a community mental health program director, or the director's designee consult with the defendant"; and may order either a "psychiatric or psychological examination of the defendant" or have the defendant committed to the state hospital or another facility for an evaluation.

We turn to petitioner's claim. Petitioner argues that trial counsel was inadequate and ineffective for not

triggering the court's authority under ORS 161.365 to evaluate petitioner's fitness to proceed after petitioner rejected the negotiated 70-month plea and sought the maximum penalty. We review the decision of the post-conviction court for legal error. *Green*, 357 Or at 312.

Petitioner contends that under the circumstances of this case, an attorney exercising reasonable professional skill and judgment would have requested a competency evaluation pursuant to ORS 161.365. In support, petitioner cites his unusual behavior during the plea negotiation process, as well as trial counsel's knowledge that petitioner had a history of mental health issues, had committed a pretext robbery with the intent of being arrested, and wanted to plead guilty solely to be allowed to return to prison.

The superintendent responds that trial counsel's decision to not pursue a competency evaluation for petitioner was objectively reasonable under the circumstances. The superintendent highlights the trial court's finding that trial counsel was credible and petitioner was not credible, citing trial counsel's declaration that, based on his meetings with petitioner before the plea entry, petitioner met minimal competency standards.

We conclude that the post-conviction court did not err in rejecting petitioner's claim. The standard for competency is not high; it requires only that petitioner is able to "understand the nature of the proceedings," "assist and cooperate" with his attorney, or "participate in the defense." ORS 161.360(2)(a) - (c); *see also Jenkins v. Cain*, 310 Or App 608, 616-17, 487 P3d 433 (2021) (highlighting that "'capacity' for aid and assist purposes is narrowly defined" and cabined to the ORS 161.360(2) factors); *Simon*, 294 Or App at 864 (explaining that the minimum competency standard "has a modest aim: It seeks to ensure that a defendant has the capacity to understand the proceedings and to assist counsel" (internal quotation marks and brackets omitted)). There was sufficient evidence in the record for the post-conviction court to determine that trial counsel's interactions with petitioner did not give rise to concerns about petitioner's competency, such that trial counsel was required to pursue an evaluation under ORS 161.365. Accordingly, the

post-conviction court did not err when it determined that trial counsel's representation was not constitutionally deficient under either the state or federal constitution.

Affirmed.

**HELLMAN, J.,** concurring.

While I authored the majority because trial counsel was not ineffective in the specific way in which petitioner claimed in the post-conviction petition, that opinion does not reflect the whole story. I write separately to highlight the many troubling aspects of this case that deserve to be recognized, even if they do not lead to relief for petitioner in this case.

Although petitioner's actions did not conclusively demonstrate that trial counsel was inadequate or ineffective for failing to trigger the trial court's authority under ORS 161.360 to evaluate petitioner's fitness to proceed, the record reflects numerous warning signs concerning petitioner's mental state. Trial counsel found petitioner's request for the maximum amount of time in prison to be "unusual," and trial counsel further witnessed petitioner negotiate with the prosecutor for *more* prison time than petitioner initially accepted. Trial counsel was aware that petitioner had previously been found guilty except for insanity on a robbery charge and admitted to the Oregon State Hospital. *See Tharp v. Psychiatric Sec. Review Bd.*, 338 Or 413, 110 P3d 103 (2005). Trial counsel was also aware that petitioner had prior diagnoses of schizoaffective disorder and that petitioner was actively prescribed psychotropic medication, as well as that petitioner had previously been granted, and relied on, Social Security Disability benefits because of his mental illness. Further, trial counsel knew that part of the reason that petitioner committed the pretext crime was because had difficulty "trigger[ing] those benefits again" after he was released from prison and was unable to engage with his needed services. And, while petitioner openly discussed his mental health with counsel, petitioner did not want trial counsel to obtain medical or mental health records or investigate the issue beyond what petitioner shared with him. Those facts are red flags that should have alerted counsel

that he needed to look more deeply into petitioner's mental health and current situation, instead of simply acquiescing in petitioner's expressed desire to return to prison for as long as possible. *See Sparks v. Premo*, 289 Or App 159, 189, 408 P3d 276 (2017) ("Moreover, petitioner introduced evidence that there were enough 'red flags' in the mitigation evidence that trial counsel had uncovered that reasonably competent counsel would have conducted additional investigation.")

We have regularly addressed post-conviction claims that trial counsel was ineffective for failing to investigate a petitioner's mental health during different stages of trial. *See, e.g.*, *Snyder v. Amsberry*, 306 Or App 439, 448, 474 P3d 417 (2020) (when addressing a claim that trial counsel was inadequate for failing to investigate a mental health defense, explaining that a petitioner may be able to obtain relief based on such an assertion if the petitioner "adduce[s] evidence of what trial counsel would have discovered had trial counsel undertaken the proposed investigation" (internal quotation marks and ellipses omitted)); *see also Maxfield v. Cain*, 322 Or App 405, 416, 520 P3d 890 (2022) (concluding that trial counsel was inadequate and ineffective for not presenting mitigation information related to the petitioner's "childhood difficulties and the impact of his early drug exposure on his mental health and behavioral regulation"); *Nichols v. Persson*, 304 Or App 548, 567, 468 P3d 952 (2020), *rev den*, 368 Or 511 (2021) (affirming, because the petitioner failed to demonstrate prejudice, on a claim that trial counsel failed to investigate a mental health, intellectual capacity, or drug dependence defense theory); *Brenner v. Nooth*, 283 Or App 868, 872-73, 391 P3d 947, *rev den*, 361 Or 671 (2017) (affirming, because petitioner did not show prejudice, on a claim that "petitioner's trial counsel failed to develop a defense theory based on petitioner's health problems, including his military service-connected post-traumatic stress disorder" (internal quotation marks omitted)); *Lotches v. Premo*, 257 Or App 513, 518, 306 P3d 768, *rev den*, 354 Or 597 (2013) (addressing a petitioner's claim that trial counsel was inadequate for "fail[ing] to investigate his mental health history in order to better buttress the defense case"); *Short v. Hill*, 195 Or App 723, 725, 99 P3d 311 (2004), *rev den*, 338 Or 374 (2005) (affirming, because petitioner did not show

he suffered prejudice, on a claim that trial counsel's representation was constitutionally defective where trial counsel "failed to introduce expert testimony to corroborate [the petitioner's] assertion that, because he was suffering from methamphetamine withdrawal, he was unable to form the requisite criminal intent"). Even though we have extensive case law on that issue, post-conviction counsel raised only a claim involving a question about petitioner's competency—a claim that is nearly impossible to win, both because of the minimal standards for competency and because of the difficulty in conducting a retrospective competency assessment.

Additionally, despite petitioner's responses to the court's routine questions at the plea hearing, it is far from clear that petitioner pleaded guilty because he had, in fact, committed a first-degree robbery. I observe, as trial counsel did in his notes, that there is a serious question about whether petitioner's actions *vis-à-vis* the money constituted first-degree robbery. Apart from the beer, which he consumed, petitioner's actions do not reflect that he intended to deprive anyone of any other property. *See* ORS 164.015 (requiring that the defendant had the "intent to deprive another of property or to appropriate property to the person or to a third person"). So was it really necessary for the district attorney to charge petitioner for a crime as serious as first-degree robbery in this situation? In addition, petitioner did not tell trial counsel that he wanted to plead guilty because he committed a first-degree robbery. Instead, petitioner framed the conversation as one about his own choice to return to prison for as long as possible, and informed trial counsel that he was not interested in delaying the case for any reason.

Petitioner's focus on returning to prison for housing and structure highlights the wider societal problem with prison operating as an alternative social services option. Petitioner took the beer and the money and asked the cashier to call the police with the purpose of returning to prison because, as he told trial counsel, he "just [could not] make it on the outside, want[ed] structure of prison." At first read, that position seems completely irrational. And yet, the tragic reality is that petitioner's choice could have seemed

rational to him, given his situation. When faced with the choice of sleeping on the streets, hunger, no job prospects, and no readily apparent way to improve his situation, a place with housing, food, medical care, and a familiar environment may have seemed far better to petitioner than any other alternative, even taking into account the harsh realities of day-to-day life faced by adults in custody. Indeed, trial counsel, the prosecutor, and the court permitted petitioner to enter a guilty plea under these circumstances, which suggests that for those doing the day-to-day work in criminal cases, petitioner's actions, while "unusual," were not so outside the norm as to require intervention.

What, though, does that say about our systems to help our most vulnerable citizens? What does that say about how we view public safety? What does that say about how we acquiesce in the resolution of criminal cases? This case is one of many that reveals our broken safety net and the irrationality in our systems. For too long, we have siloed criminal charges, mental illness, lack of housing, and lack of other needed supports, treating them as independent issues, instead of addressing them as the intertwined reality that they are. In so doing, we have created an environment where people like this petitioner make these kinds of choices, and those choices can be considered "rational." Post-conviction proceedings are not the forum to solve those issues, but I am not blind to the realities that exist for people like petitioner, and in our criminal justice system at large.

Despite my serious misgivings about petitioner's circumstances, and about the way in which both his trial and post-conviction cases were handled, our review is of the post-conviction court's decision on the claim that was made, which only challenged trial counsel's failure to seek a competency evaluation under ORS 161.365. On this record, the post-conviction court did not err in denying relief on that claim.

I concur.

Ortega, P. J., joins in this concurrence.