Submitted April 5, reversed and remanded August 23, petition for review denied December 28, 2017 (362 Or 300)

MICHAEL NORWOOD,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
13C14252; A159459

403 P3d 502

Jason Weber and O'Connor Weber LLC filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Egan, Presiding Judge, and Lagesen, Judge, and Linder, Senior Judge.

## LINDER, S. J.

The issue presented in this post-conviction appeal is whether a defense lawyer exercising reasonable professional skill and judgment would have challenged the evidence at petitioner's criminal trial as insufficient to establish that he was armed with a deadly weapon during his commission of a burglary. To resolve that issue, we must determine whether an unloaded firearm qualifies as a "deadly weapon" when the firearm is contained in a closed, zippered carrying case and is possessed together with a separate bag that contains ammunition for the firearm. As we will explain, we conclude that those circumstances do not satisfy the statutory meaning of deadly weapon for purposes of first-degree burglary. We further conclude that, because petitioner's criminal trial counsel did not challenge the sufficiency of the state's evidence, petitioner was denied reasonably competent counsel and was prejudiced by the greater sentence he received based on his possession of a deadly weapon in committing the burglary. The post-conviction court therefore erred in denying post-conviction relief, and we reverse and remand.

## I. BACKGROUND

The relevant facts are not disputed. Petitioner was charged by indictment with burglary in the first degree, theft in the first degree (five counts), felon in possession of a firearm (four counts), and aggravated theft in the first degree. The first-degree burglary charge alleged that petitioner had "unlawfully and knowingly enter[ed] or remain[ed] in a dwelling * * * with the intent to commit the crime of theft therein, while armed with a deadly weapon[.]" Petitioner waived his right to a jury and was tried by the court. At trial, the state presented evidence that petitioner had unlawfully entered an unoccupied dwelling; once inside, he stole four of the victim's 14 firearms and all of the victim's ammunition. One of the stolen firearms was a Smith and Wesson AR-15. According to the victim, the AR-15 was fully functional, unloaded, and inside a closed, zippered, black "carry bag." The victim kept the ammunition for his various firearms in a separate bag. That bag included ammunition for the AR-15, but not for any of the other three firearms stolen in

the burglary. The ammunition for the AR-15 consisted of "25 P-mags fully loaded." The victim explained that a "P-mag" is "a magazine that fits in the bottom of the AR-15 that holds the rounds so you can shoot—every time you pull the trigger, it loads one in."

The principal issue at petitioner's criminal trial was identity—that is, whether petitioner was the person who had entered the dwelling and taken the victim's firearms and ammunition. In closing argument, the state, in urging that the allegations relevant to first-degree burglary were satisfied, pointed to the fact that four operational firearms were taken, together with the ammunition; beyond that, the state focused on evidence that petitioner was the person who committed the burglary. Defense counsel did not, by motion for judgment of acquittal or through closing argument, challenge the evidence as insufficient to show that petitioner possessed a deadly weapon. *Cf. State v. McCants/Walker*, 231 Or App 570, 576, 220 P3d 436 (2009), *rev'd on other grounds by State v. Baker-Krofft*, 348 Or 655, 239 P3d 226 (2010) (in bench trial, sufficiency of evidence may be challenged either by formal motion for judgment of acquittal or by clearly raising issue in closing argument).[1] At the conclusion of the evidence, the trial court found petitioner guilty of all charges, including first-degree burglary. In sentencing petitioner on that charge, the trial court ranked the burglary as a crime category 9, rather than a 7, based on petitioner's possession of a deadly weapon during the commission of the crime.[2] Under that crime category ranking, the trial court imposed an upward departure sentence of 144 months incarceration, followed by 36 months post-prison supervision.

---

[1] Defense counsel argued that the trial court should decline to "make a finding" that petitioner "was armed during this burglary," but on a different ground. Specifically, counsel urged that petitioner had already broken into the residence with the intent to commit theft before he found and stole the firearms. According to defense counsel, the burglary was "complete" at that point; any later possession of the firearms and ammunition was insufficient to prove that petitioner (if the trial court found he was the person who committed the crime) was armed with a deadly weapon "during" the burglary. The trial court rejected that argument.

[2] *Compare* OAR 213-018-0025(1) (first-degree burglary ranked at crime category 9 if offender was armed with a deadly weapon) *with* OAR 213-018-0025(2) (first-degree burglary ranked at crime category 8 if offense was committed in an occupied dwelling) *and* OAR 213-018-0025(3) (first-degree burglary ranked at crime category 7 if it cannot be ranked at either crime category 8 or 9).

Petitioner brought this action for post-conviction relief, alleging that he was denied adequate and effective assistance of criminal trial counsel under the state and federal constitutions. In particular, petitioner claimed that the evidence was insufficient to show that he possessed a deadly weapon when he committed the burglary, and that competent counsel would have moved for a judgment of acquittal and challenged petitioner's burglary sentence on that ground. Petitioner relied on ORS 161.015(2), which defines "deadly weapon" as "any instrument, article or substance specifically designed for and *presently capable* of causing death or serious physical injury." (Emphasis added.) The evidence at petitioner's criminal trial established that the AR-15, the only stolen firearm for which there was ammunition, was unloaded and in a carry bag, while the loaded magazines for it were in another bag. Such a firearm, petitioner argued, was not "presently capable" of causing death or serious physical injury.

In response, the state[3] argued that "[a]ll that's required is that a weapon be operable and that there be ammunition for that weapon." The ammunition in this instance, the state stressed, "was loaded in a PMAG, which means essentially you just have to slip it into the weapon and the weapon is ready to fire." According to the state, the fact that the AR-15 was in a case was "not enough to stop a weapon from being deadly" and was at most a "minor hurdle to loading a weapon." Petitioner replied by emphasizing that the AR-15 and the ammunition were not "together" in such a way that loading the AR-15 required simply slipping an ammunition magazine into the rifle. Instead, the AR-15 was in one case, while the ammunition for it was in a separate bag, mixed in with ammunition for firearms that petitioner had not stolen. According to petitioner, "There's a lot of steps that [would] need to be taken before the AR-15 is presently capable, one of which [is] figuring out which ammunition would even go into that gun."

The post-conviction court denied relief. In explaining its ruling, the court noted that the dispute raised an

---

[3] In our description of the post-conviction proceedings, we use "the state" to refer to defendant, the superintendent of the correctional facility where petitioner is incarcerated.

"interesting issue," no case law was directly on point, and the issue was one that "the Court of Appeals can take a look at * * * and probably give us some more guidance." Factually, the post-conviction court found that

"[petitioner] entered and took numerous unloaded weapons but took ammunition that fit one of them. It would have taken only seconds to load that gun. [Petitioner] therefore [had] an easily loaded gun inside someone else's home."

In the post-conviction court's view, such a circumstance fell within the danger that the legislature sought to avoid—*i.e.*, the risk to an occupant posed by someone who unlawfully enters and remains in a home while having the capability of using a weapon. The court concluded that a motion for judgment of acquittal challenging the sufficiency of the evidence on the deadly weapon allegation would have failed, and petitioner therefore was not denied adequate representation by counsel. Petitioner then brought this appeal.

## II. DISCUSSION

To prevail on a post-conviction claim for inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, a petitioner must prove, by a preponderance of the evidence, facts demonstrating that counsel failed to exercise reasonable professional skill and judgment and that the petitioner suffered prejudice as a result. *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). As to the first part of the test, "[i]f a lawyer exercising reasonable professional skill would have recognized the existence of an issue and would have concluded under the circumstances that the benefits of raising it outweighed the risks of doing so, failing to raise the issue may constitute inadequate assistance." *Krieg v. Belleque*, 221 Or App 36, 40, 188 P3d 413 (2008). As to the second part of the test, "a petitioner must show that his or her trial counsel's deficiency had a tendency to affect the verdict." *Short v. Hill*, 195 Or App 723, 729, 99 P3d 311 (2004), *rev den*, 338 Or 374 (2005).[4]

---

[4] Because we decide this case under Article I, section 11, of the Oregon Constitution, we need not address petitioner's argument under the Sixth Amendment to the United States Constitution. *Lichau v. Baldwin*, 333 Or 350, 365 n 3, 39 P3d 851 (2002).

On appeal, petitioner essentially renews the arguments he made to the post-conviction court. Petitioner claims, first, that his criminal trial counsel was constitutionally inadequate for failing to move for a judgment of acquittal challenging the evidence as insufficient to show that he possessed a deadly weapon. Petitioner argues that he was prejudiced by that failure, because such a motion would have resulted in his acquittal on the burglary charge. Second, petitioner claims that his criminal trial counsel was constitutionally inadequate for failing to object to his sentence on the burglary charge, which was based on a higher crime classification due to his possession of a deadly weapon while committing the offense. On that claim, he asserts prejudice based on the greater sentence that he received on the burglary conviction due to the finding that he possessed a weapon during the crime's commission. Both claims turn on the same threshold legal issue—*viz.*, the meaning of "deadly weapon" for purposes of burglary in the first degree. We therefore begin with that issue.

A.  *The Meaning of "Deadly Weapon"*

To resolve the meaning of "deadly weapon," we follow the familiar interpretative methodology set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009) (refining analysis articulated in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993)). Our task is to determine the legislature's intent, which we do by examining a statute's text, context, and any pertinent legislative history. *Gaines*, 346 Or at 171-72.

Under Oregon's statutory scheme, burglary is either a first-degree or second-degree offense, depending on whether certain aggravating factors are involved in the commission of the crime. The baseline offense, burglary in the second degree, is committed if a person "enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.215. Burglary in the second degree elevates to first degree if any of several specified circumstances are involved in the crime's commission. If, for example, the building involved is a dwelling, that circumstance alone elevates the crime to first-degree burglary. ORS 164.225(1). Other circumstances that elevate second-degree burglary

to first-degree burglary do so regardless whether the building involved is a dwelling or nondwelling. *See* ORS 164.225 (1)(a)-(c) (second-degree burglary elevates to first-degree burglary if "the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom" other aggravating circumstances exist). As relevant here, when an offender commits what would otherwise be second-degree burglary while armed with a "deadly weapon," the offense elevates to first-degree burglary. ORS 164.225(1)(a).

For purposes of first-degree burglary, as well as for the criminal code more generally, "deadly weapon" is defined as "any instrument, article or substance specifically designed for and *presently capable* of causing death or serious physical injury." ORS 161.015(2) (emphasis added). The pivotal question here is not what it means for a weapon to be "capable" of causing death or serious physical injury, but what it means for a weapon to be "presently" capable of causing those harms. More specifically, and casting the issue in terms of the facts that this case presents, the question is whether a fully operational firearm, when carried unloaded in a closed case, along with ammunition in a separate bag, is "presently" capable of causing death or serious physical injury in the sense that the legislature contemplated.

Because "presently" is a word of ordinary usage, both parties look to dictionary definitions to aid in determining the legislature's intent. Petitioner relies on one definition set out in *Webster's Third New Int'l Dictionary* 1793 (unabridged ed 2002): "without delay or hesitation : FORTHWITH, IMMEDIATELY." Drawing on that definition, petitioner argues that possessing an unloaded firearm in a closed carrying case, and ammunition in a separate bag, precludes a conclusion that the firearm can cause death or injury immediately and without delay. The state, however, relies on an alternative definition of "presently" from *Webster's*: "after a little while : before long : after a short time[.]" *Id.* at 1793.[5] Drawing on that alternative meaning, the state argues that where, as here, a factfinder could conclude that the firearm could be loaded in a short time, the statutory requirement

---

[5] The state also relies on the same meaning from *The American Heritage Dictionary of the English Language* 1393 (5th ed 2016): "[i]n a short time; soon."

that the firearm be "presently" capable of causing death or serious physical injury is met.[6]

Both petitioner's and the state's proffered meanings of "presently" are plausible when the definition of "deadly weapon" is viewed in isolation.[7] Petitioner's position, however, is bolstered by the broader statutory context in which the term "deadly weapon" appears. The criminal code generally, and the first-degree burglary statute in particular, distinguish between "deadly" and "dangerous" weapons. A "dangerous weapon" is defined as one "which under the circumstances in which it is used, attempted to be used or threatened to be used, is *readily capable* of causing death or serious physical injury." ORS 161.015(1) (emphasis added). As pertinent to our analysis here, the key distinction between a deadly and a dangerous weapon is the difference between being "presently" versus "readily" capable of causing death or serious physical injury. *Webster's* defines "readily" as:

---

[6] Although the state does not mention or rely on the post-conviction court's factual findings, the court's finding that the stolen AR-15 in this case could be loaded "easily" and "in a matter of seconds" would satisfy the legal standard that the state proposes. *Cf. Ball v. Gladden*, 250 Or 485, 488, 443 P2d 621 (1968) (post-conviction court's findings of historical facts, if supported by record, bind appellate court).

[7] The state discounts the definition on which petitioner relies, pointing out that dictionaries deem it an "archaic" meaning of the word "presently." *See Webster's* at 1793 (so observing) and *American Heritage Dictionary* at 1393 (defining "presently" to include the meaning "[a]t once, immediately"; characterizing that meaning as "archaic"). In the context of dictionary definitions, "archaic" conveys that an ascribed meaning is an older one and is no longer used except sporadically or "in special contexts." *Webster's* at 17a; *see also American Heritage Dictionary* at xxiii ("archaic" designates terms that "have largely fallen out of use since around 1950 or are associated with an earlier era"). Dated meanings, however, are frequently settled and familiar ones, and the use of words with settled meanings can have virtue in the law, even if dictionaries deem those meanings "archaic." Although other terms (such as "now") may be common in daily conversation or other fields to convey the more "archaic" meaning of "presently," the term "presently" remains prevalent in law to convey immediately or in the present moment rather than soon or after a short while. *See, e.g.,* ORS 743.049(1) (exempting from execution certain annuity benefits "presently due and payable"); *see also* ORS 25.100(1) (certain judgments subject to modification by court in another county if party to judgment is "presently" in that county); ORS 471.302(1)(a) (authorizing OLCC to grant temporary off-premises sales license if applicant is located in area "presently zoned" for commercial use); ORS 813.430(1) (requiring increase in time for suspending driving privileges for any person "presently participating" in DUII diversion program). We therefore do not consider petitioner's proffered "archaic" meaning implausible in this context.

"[I]n a ready manner : with readiness: as **a:** with prompt willingness : without hesitating, quibbling, or delaying : with alacrity : WILLINGLY * * * **b:** with fairly quick efficiency : without needless loss of time : reasonably fast : SPEEDILY * * * **c:** with a fair degree of ease : without much difficulty : with facility : EASILY * * *."

*Webster's* at 1889. Thus, both "readily" and "presently" could mean, as the state urges, in a short time. But "presently," unlike "readily," potentially can mean something else: immediately.

The overlap in the meaning of the two terms favors petitioner's position. Ordinarily, when the legislature uses different terms, we assume that the legislature intends those terms to have different meanings. *Dept. of Transportation v. Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006). That assumption is particularly warranted when, as here, the terms appear together in the same statutory scheme and give rise to different legal consequences. For the crime of burglary, being armed with a "deadly weapon" while committing a burglary elevates the offense to a first-degree crime. ORS 164.225(1)(a). Merely being armed with a "dangerous" weapon, however, is not an aggravating factor at all. Instead, a person must use or threaten to use the dangerous weapon to elevate conduct that would otherwise be second-degree burglary to a first-degree crime. ORS 164.225(1)(c). If we were to construe "presently" to mean "after a short time," little, if any, meaningful difference would seem to remain between a deadly and dangerous weapon, at least in the context of an operable firearm.

Text, together with context, therefore supports a conclusion that the legislature meant "presently" to mean immediately, as in without hesitation or delay, while "readily" could allow for a short passage of time. For an operable firearm, the fact that the firearm is loaded and accessible would seem to suffice to make it "presently capable" of causing death or serious physical injury, barring an unusual factual circumstance that would frustrate its immediate use. On the other hand, if the firearm is unloaded and cannot be fired without taking "a short time" to load it, those circumstances better fit with the idea that the firearm is "readily" capable of causing death or serious physical injury.

Our analysis need not stop with text and context, however. We may also consider pertinent legislative history. Here, that legislative history confirms the meaning that the statutory text and context suggest.

The definitions of deadly weapon and dangerous weapon in ORS 161.015(1) and (2) were adopted as part of the 1971 Legislative Assembly's comprehensive revision of the Oregon Criminal Code. Or Laws 1971, ch 743, § 3. The official commentary to the revision explains that the pre-existing law in Oregon treated the terms "dangerous" and "deadly" interchangeably. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 3, 3 (July 1970). Also under pre-existing law, an unloaded firearm did not qualify as a dangerous weapon. *Id.* Although a factfinder could infer that a firearm used to threaten a victim is loaded, if that inference were not available or the evidence otherwise established that the firearm was in fact unloaded, use of that unloaded firearm in committing a robbery was not armed robbery. *Id.* at 3-4 (discussing proposition and citing cases). That posed a problem for the crime of burglary as well as robbery. *Id.* at 3.

The commission sought to solve that problem by defining "dangerous weapon" as one "readily capable" of causing death or serious injury, which would include an unloaded firearm, because it can be "readily adapted to [the purpose of producing serious bodily injury] by loading it." *Id.* at 4. Simultaneously, the commission proposed that burglary and robbery be elevated to first-degree offenses not only when the offender is armed with "a deadly weapon," but also when the offender "uses or attempts to use" a dangerous weapon (burglary) or "uses or threatens to use" a dangerous weapon (robbery). Commentary § 137 at 145 (elements of first-degree burglary) and § 150 at 154 (elements of first-degree robbery). The commission's proposed definition of "dangerous weapon," together with the proposed changes to the elements of first-degree burglary and robbery, thus ensured that use or attempted/threatened use of an unloaded weapon to commit a burglary or robbery would be a first-degree offense and placed that conduct on par with mere possession of a "deadly weapon" during those crimes.

As for what qualified as a "deadly weapon," the commission wanted to "continue the necessity of the firearm being loaded before it would be considered a 'deadly' weapon within the meaning of the 'armed robbery' statute." Commentary § 3 at 4. One way to accomplish that would have been to define "deadly weapon," as other states had done, as "any loaded weapon." *Id.* at 4. But the commission was concerned that such a definition could "disturb" existing case law, which permitted (and still permits) a factfinder to infer that a firearm was loaded from its threatened use within "carrying distance of the threatened victim." *See id.* at 3-4 (citing cases permitting inference); *see also State v. Mustain*, 66 Or App 367, 371, 675 P2d 494, *rev den*, 297 Or 83 (1984) (factfinder may infer firearm was loaded if it was pointed at victim within firing range). The commission therefore opted for a "more general definition" by defining "deadly weapon" as one "presently capable" of causing death or serious physical injury. The commission explained:

> "The requirement of 'present capability' resolves the problem of an 'unloaded' gun. If a gun has a shell in firing position it is 'loaded' and presently capable of causing death or serious physical injury and, hence, a deadly weapon. Likewise, a gun that has a shell in the magazine or chamber would be within the purview of the definition of deadly weapon because, for all practical purposes, the weapon is 'loaded' and has the same present capability."

Commentary § 3 at 4.[8]

---

[8] The example in the quote of "a gun that has a shell in the magazine or chamber" was added to the commentary after a hearing on May 15, 1970, in which the commission finalized the definitions. During that hearing, Frank Knight, a member of the commission, voiced concern that in the "ball and powder" firearm days, a firearm was time consuming to load. But modernly, he observed, "a gun could have a shell in the chamber that was not in firing position but which could be placed in firing position by the flick of a lever." Minutes, Criminal Law Revision Commission, May 15, 1970, 55. Knight noted that "the commentary as written stated that Oregon followed the rule that the gun had to be loaded in order to be a deadly weapon." *Id.* Knight did not urge the commission to change its essential approach, which was to "resolve[] the problem of an 'unloaded gun'" by defining deadly weapon in a way that would exclude an unloaded firearm. *See* Commentary § 3 at 4 (referring to "the problem of 'an unloaded gun'"). His concern was only that the traditional notion of a loaded firearm might be too narrow to include modern firearms, which could advance a round from the chamber to firing position with a "flick of a lever."

Donald Paillette, the project director for the commission's work, responded:

That history both clarifies and confirms the meaning suggested by text and context. *See State v. Woodley*, 306 Or 458, 462, 760 P2d 884 (1988) (unless contrary indication exists, court assumes that commission's explanations for its drafting choices reflect legislature's intent). The words "presently capable" were intended to describe firearms loaded with a round in the firing position and those with "the same present capability" of being fired. "Readily capable," on the other hand, was intended to include unloaded operable firearms on the theory that such a firearm could be loaded in a short time. The definition of "presently" on which petitioner relies comports with that legislatively intended meaning, while the definition on which the state relies better comports with what the legislature intended "readily capable" to mean in the definition of "dangerous weapon."

B.  *Counsel's Exercise of Reasonable Professional Skill and Judgment*

With that understanding of the meaning of "deadly weapon," we turn to the first part of the test of the constitutional adequacy of petitioner's representation by trial counsel. Framed in the context of this case, the question is whether reasonably competent counsel, in defending petitioner on the burglary charge, would have challenged the state's evidence as insufficient to show that petitioner was armed with a deadly weapon during the commission of the burglary. As earlier described, petitioner argues that a reasonably competent defense lawyer would have moved for a judgment of acquittal on the charge of burglary in the first degree, and that the motion, if resolved correctly, would have resulted in his acquittal on that charge. Relatedly, also as earlier described, petitioner argues that reasonably competent defense counsel would have objected to the higher crime ranking that the post-conviction court used in sentencing

---

"Mr. Knight's concern could be satisfied by a statement in the commentary to the effect that the [c]ommission considered a gun which had a bullet or shell in the chamber or magazine, whether or not it was in firing position, to fall within the definition of 'deadly weapon' because that weapon was 'presently capable of causing death or serious physical injury.' An unloaded weapon would then, in effect, be defined as one which had no ammunition in it at all."

Minutes, Criminal Law Revision Commission, May 15, 1970, 56. The commission members at that point "generally agreed that the commentary should be revised to this effect." *Id.*

him on the burglary conviction, which was based on petitioner's possession of a deadly weapon in committing the offense.

We agree that a lawyer exercising reasonable professional skill and judgment would have challenged the evidence as insufficient to show that petitioner possessed a deadly weapon during his commission of the burglary. At the time of petitioner's trial, it was an open question whether possession of an operable but unloaded firearm, together with the ammunition for that firearm, could be found to be "presently capable" of causing death or serious physical injury, as the definition of deadly weapon in ORS 161.015(2) requires. Indeed, the question was not just an open one, but had been identified in several of our cases. In past cases, we had held that a firearm used in a robbery that was either shown to have been loaded or could be inferred to have been loaded qualifies as a "deadly weapon." *State v. Armstrong*, 52 Or App 161, 171, 628 P2d 1206, *rev den*, 291 Or 662 (1981). We also had held that an unloaded firearm does not qualify as a "deadly weapon," while suggesting that the answer might differ under circumstances not presented by that case, such as the presence of ammunition that would permit the firearm to be "readily loaded." *Mustain*, 66 Or App at 371. The latter observation was *dicta*, however. Until now, no reported case has presented any of those different circumstances. *See generally State v. Kuester*, 275 Or App 414, 421, 364 P3d 685 (2015) (noting that "no precedent" supports view that unloaded gun qualifies as "presently" or even "readily" capable of causing death or serious physical injury and "case-specific" circumstances may be important in analysis). Also, until now, no reported decision had undertaken an examination of the meaning of "deadly weapon" pursuant to the interpretative methodology of *Gaines/PGE*. Thus, at the time of petitioner's criminal trial, the issue that this case presents had been identified in the reported cases, but not resolved.

Given the state of the law and the evidence presented in petitioner's burglary trial, reasonably competent counsel would have recognized that petitioner's case presented that unresolved issue. *See Krummacher v. Gierloff*, 290 Or 867,

875, 627 P2d 458 (1981) (task of criminal defense lawyer is to "prepare himself on the law to the extent appropriate to the nature and complexity of the case"). Reasonably competent counsel would have also recognized the potential for the issue to be resolved favorably to petitioner, which would have had "obvious potential benefits" to petitioner on the burglary charge (as we discuss in the next section) without any "negative strategic impact on the defense" on either the burglary or the other charges that petitioner faced. *See Lamb v. Coursey*, 238 Or App 647, 652-53, 243 P3d 130 (2010), *rev den*, 350 Or 230 (2011) (discussing when reasonable counsel could be expected to raise unsettled question of law). We therefore agree with petitioner that his defense counsel, by not challenging the sufficiency of the state's proof that he was armed with a "deadly weapon," failed to exercise reasonable professional skill and judgment in defending petitioner on the first-degree burglary charge.

## C.  *Prejudice*

The next question in determining the constitutional adequacy of petitioner's trial counsel is whether petitioner was prejudiced by his counsel's failure to challenge the sufficiency of the state's evidence. We agree that petitioner was prejudiced. But, as we will explain, the nature of that prejudice is narrower than petitioner contends.

First and foremost, we conclude that, had petitioner's trial counsel challenged the sufficiency of the state's "deadly weapon" evidence, petitioner would have prevailed as a matter of law, either at the trial court level or eventually on appeal. The interpretation that we have given to "presently capable" was not satisfied by the evidence in petitioner's criminal trial. Specifically, there was no evidence that the AR-15 was loaded, and no basis on which to infer that it was loaded. To the contrary, the only evidence on the point—the victim's testimony—was that the AR-15 was unloaded at the time of the burglary. A reasonable factfinder could not have found otherwise. Neither could a reasonable factfinder have found that, with the AR-15 contained in a closed carry bag, and the ammunition in a separate bag, the AR-15 could have been so immediately loaded as to have the "same present capability" as a firearm with a round in the

firing position. Given the state of that evidence, a challenge to the sufficiency of the state's proof, if correctly resolved, would have prevailed.

But we are not satisfied that, as petitioner asserts, he would have been entitled to an acquittal on the burglary charge. As we earlier outlined, conduct that would otherwise be burglary in the second degree is elevated to a first-degree offense by any of several aggravating circumstances. One is burglary of a dwelling. ORS 164.225(1). Another is use of a deadly weapon during the burglary, regardless whether the building burglarized is a dwelling or a nondwelling. ORS 164.225(1)(a). Here, it was undisputed in petitioner's bench trial that, as the indictment alleged, the building from which the firearms were stolen was a dwelling. The evidence therefore established petitioner's guilt on the charge of first-degree burglary, with or without proof that he possessed a deadly weapon during the crime's commission.[9] *State v. O'Quinn*, 151 Or App 168, 947 P2d 1135 (1997) (where indictment charged defendant with first-degree burglary based on unlawful entry of a dwelling, and further alleged defendant was armed with deadly weapon, failure of proof on deadly weapon allegation required resentencing, not vacation of conviction).

A motion for judgment of acquittal would have served another purpose, however: It would have prevented enhancement of petitioner's burglary sentence on the basis that he was armed with a deadly weapon.[10] As earlier

---

[9] Our conclusion is consistent with how the case was tried. As we earlier noted, defense counsel unsuccessfully took the position that the trial court should not "make a finding" that petitioner was armed with a deadly weapon at the time of the burglary, because the burglary was "complete" by the time that petitioner found and took possession of the firearms and ammunition. *See* 287 Or App at 445 n 1. As that argument recognized, any deficiency in the state's "deadly weapon" evidence was important for its bearing on the sentencing enhancement finding that the court was being asked to make, not for its bearing on guilt of the first-degree burglary charge.

[10] The legislature has not specified a procedural way to challenge the sufficiency of the evidence on factors that increase a sentence. A motion for judgment of acquittal is not necessarily a good fit. *See* ORS 136.445 (motion for judgment of acquittal appropriate when evidence will not support verdict; allowance bars reprosecution on same offense); ORS 136.490 (defendant to be discharged from custody on allowance of acquittal). But this court and practitioners in the bar have proceeded on the assumption that a motion for judgment of acquittal is at least an adequate procedural way to test the adequacy of the evidence on a

described, in sentencing petitioner on the burglary conviction, the trial court ranked the burglary as a crime category 9, rather than a 7, based on petitioner's possession of a deadly weapon during the commission of the crime. That ranking, as earlier described, in turn resulted in a lengthier sentence (144 months incarceration followed by 36 months post-prison supervision) than petitioner otherwise could have received on the burglary conviction. Trial counsel's failure, through a motion for judgment of acquittal or otherwise, to challenge the "deadly weapon" evidence therefore prejudiced petitioner.

For those reasons, we conclude that petitioner was denied constitutionally adequate assistance of counsel, contrary to the guarantee of Article I, section 11. Petitioner is entitled to relief in the form of resentencing on his first-degree burglary conviction. *See* ORS 138.520 (relief in post-conviction proceeding may include modification of sentence).[11]

Reversed and remanded.

---

sentencing enhancement factor. *See, e.g., State v. Villagomez*, 281 Or App 29, 40, 380 P3d 1150 (2016), *rev allowed*, 360 Or 851 (2017) (where evidence was insufficient to establish sentencing enhancement factor, trial court erred in denying motion for judgment of acquittal on that ground and in imposing enhanced sentence); *see generally State v. Angelo*, 282 Or App 403, 411, 385 P3d 1092 (2016), *rev den*, 361 Or 311 (2017) (motion for judgment notwithstanding verdict was not correct procedure to raise challenge to sufficiency of evidence on fact that enhanced sentence; challenge must be raised before judgment); Oregon State Bar, *Criminal Law*, § 20.4-8(a) (2013 rev) (motion for judgment of acquittal "tests whether the prosecution's evidence is legally sufficient to support a guilty verdict on the offense or a finding that an offense-subcategory factor exists").

[11] In his petition for post-conviction relief, as well as in his brief on appeal, petitioner requests that the court either reverse his conviction for first-degree burglary or, citing and quoting ORS 138.520, remand for "such other relief as may be proper and just." Neither party discusses the possibility that "proper and just" relief in the form of resentencing on the burglary conviction may entail resentencing on the other convictions that were part of the same case as his burglary conviction. *See* ORS 138.222(5) (requiring resentencing on affirmed counts when appellate court reverses and remands for resentencing on any felony in same case). Nothing in our decision or disposition forecloses consideration and resolution of that issue on remand.