***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted July 6; conviction for delivery of methamphetamine reversed and remanded for entry of a conviction for attempted delivery of methamphetamine; remanded for resentencing, otherwise affirmed September 20, 2023; petition for review denied February 15, 2024 (372 Or 63)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TODD RICHARD FREDRICKS,
*Defendant-Appellant.*

Douglas County Circuit Court
14CR2229FE; A176992

Ann Marie Simmons, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Conviction for delivery of methamphetamine reversed and remanded for entry of a conviction for attempted delivery of methamphetamine; remanded for resentencing; otherwise affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction after a jury found him guilty of first-degree robbery, second-degree kidnapping, unlawful use of a weapon, menacing, possession of methamphetamine, and delivery of methamphetamine. Defendant raises eight assignments of error. We reverse defendant's conviction for delivery of methamphetamine, remand for entry of a conviction for attempted delivery and for resentencing, and otherwise affirm.

*Motion to sever*: Defendant's first assignment of error challenges the trial court's denial of his motion to sever the drug-related charges from the robbery-related charges. Because we conclude that defendant did not preserve his claim of error (and, arguably, invited it), we affirm on this assignment.

A defendant can challenge improper joinder through a demurrer based on the allegations in the indictment, and if the allegations are sufficient, a defendant can then litigate whether the evidence is sufficient to support joinder in a motion to sever or a motion to elect. *State v. Warren*, 364 Or 105, 122, 430 P3d 1036 (2018). Defendant here moved pretrial to sever but argued—as one would in support of a demurrer—that "the question is whether the charges should be properly joined. The charges. Not the underlying facts." Defendant thus objected to the trial court hearing any evidence on the motion. The trial court deferred ruling and allowed the state to present evidence.

The trial court then denied defendant's motion, explaining:

> "I have reviewed the charging document itself [and] I'm not going to be severing the charges.
>
> "* * * * *
>
> "I can tell you that the basis for my decision was the fact that there are overlapping dates between the drug charges that were charged and the charges immediately preceding that related to the victims."

Now, on appeal, defendant argues that the evidence was insufficient to support joinder and that the court erred in concluding otherwise. Not only is that argument

qualitatively different than the one raised below, but defendant expressly told the trial court that it did not need to consider the evidence in ruling on his motion to sever. A party who invites the court to act in a particular way cannot challenge that action on appeal. *See Anderson v. Oregon Railroad Co.*, 45 Or 211, 216-17, 77 P 119 (1904) (a party who was "actively instrumental in bringing *** about" an alleged error cannot challenge that error on appeal). And, although the trial court allowed the state to present evidence, it ultimately ruled as defendant had asked it to, *i.e.*, on the facts and dates alleged in the indictment. We therefore conclude that defendant's claim of error is unpreserved and, because he does not ask that we review it as plain error, we do not consider whether it satisfies the requisites of plain error review.

*Motion for judgment of acquittal on delivery of methamphetamine*: In his second assignment of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal on the count of delivery of methamphetamine. The state concedes that, under *State v. Hubbell*, 314 Or App 844, 872, 500 P3d 728 (2021), *rev allowed*, 369 Or 504 (2022), the evidence was insufficient to support a conviction for the completed crime of delivery of methamphetamine under a *Boyd* theory of delivery. *See State v. Boyd*, 92 Or App 51, 54-55, 756 P2d 1276, *rev den*, 307 Or 77 (1988), *overruled by Hubbell*, 314 Or App at 848. We agree and accept that concession.[1]

The only question before us is one of remedy. The state argues that the proper disposition is to reverse and remand defendant's conviction for the completed crime of delivery of a controlled substance and order that the court enter a conviction for the lesser-included crime of attempted delivery of a controlled substance. We have previously done so in cases where the evidence is legally sufficient to demonstrate that the defendant took "a substantial step towards transferring a controlled substance" and where the jury

---

[1] Because we agree that the evidence was insufficient to support a conviction for the completed crime of delivery of methamphetamine, we do not need to address defendant's third assignment of error, in which he argues that the court erred in instructing the jury on what it must find before finding defendant guilty of delivery of methamphetamine.

necessarily found that to be proven as a lesser included offense in convicting the defendant of the completed crime of delivery under *Boyd*. *E.g.*, *State v. Dippre*, 320 Or App 317, 322, 512 P3d 835 (2022) (citing ORS 161.405(1); ORS 475.055(8)).

We agree that that is the proper course here as well. After executing a search warrant on defendant's residence, police found that defendant possessed a total of 77.2 grams of methamphetamine. The police discovered the majority of defendant's methamphetamine (66.71 grams) in a floor vent in defendant's home and found a smaller quantity of methamphetamine (10.49 grams) in defendant's car, along with a digital scale. Because defendant had transferred a smaller, but significant, amount of the drug to his car, along with the scale, it could be inferred that defendant had the methamphetamine and scale in his car because he intended to sell it in the immediate future. *See State v. Newsted*, 297 Or App 848, 853, 444 P3d 527, *rev den*, 365 Or 557 (2019) (possession of scales, packaging, or other materials commonly associated with the delivery of controlled substances may support an inference that the person possessing them intends to commit delivery). Additionally, an officer testified that possessing 50 grams or more of methamphetamine was more consistent with dealing than personal use and that he had never seen a person with that amount "ever be *** just a user." Furthermore, defendant admitted that he did not measure out doses of methamphetamine for his own personal consumption. Together, that evidence is legally sufficient to establish that defendant took a substantial step toward the crime of delivery, which the jury necessarily found in convicting defendant of the completed crime based on that evidence.

*Motion for judgment of acquittal for first-degree robbery and unlawful use of a weapon*: Defendant asserts in his fifth assignment of error that the trial court erred in denying his motion for judgment of acquittal on both crimes because no rational trier of fact could have concluded that defendant's weapon was either presently or readily operable. Viewing the evidence in the light most favorable to the state to determine "whether a rational trier of fact, making

reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt[,]" *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998), we affirm.

The state charged defendant with first-degree robbery under a theory that he committed robbery while he was "armed with a deadly weapon," ORS 164.415(1)(a). A "deadly weapon" is defined as "any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury." ORS 161.015(2). A deadly weapon is "presently capable of causing death or serious physical injury" if it is operational and can be used "immediately" or "without hesitation or delay." *Norwood v. Premo*, 287 Or App 443, 451, 403 P3d 502, *rev den*, 362 Or 300 (2017).

The state also charged defendant with unlawful use of a weapon under ORS 166.220, alleging that defendant "did unlawfully attempt to use, carry or possess with intent to use * * * a firearm, a dangerous or deadly weapon." A "dangerous weapon" refers to any "weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury." ORS 161.015(1). A weapon is "readily capable of causing death or serious physical injury" if it can be used within "a short passage of time." *Norwood*, 287 Or App at 451.

Here, the state provided ample circumstantial evidence that would have allowed a rational trier of fact to find that the firearm was presently operable. Defendant's own description of his actions during the incident suggest that he believed his firearm was operational. For instance, defendant admitted to having the firearm with him and that he pulled out his gun upon entering the motel room because he was "the back guy" and because he "didn't know if [the victim] had [a gun] under the pillow or blanket." Defendant also admitted that he pointed the gun at the victim. Where a person points a gun at another within firing range, it is reasonable to infer that the gun was loaded. *State v. Mustain*, 66 Or App 367, 370-71, 675 P2d 494, *rev den*, 297 Or 83 (1984). Additionally, the victim testified that defendant made a

verbal threat to use the gun when he told her that "little girls like you get bullets in their heads." Defendant's physical and verbal threats to shoot the firearm provide sufficient circumstantial evidence from which a reasonable trier of fact could infer that the firearm was presently operable and, therefore, capable of causing death or injury. The trial court did not err in denying defendant's motions for judgment of acquittal on the charges of first-degree robbery and unlawful use of a weapon with a firearm.

*Challenge to testimony on the basis of vouching*: Defendant's sixth and seventh assignments concern the trial court's failure to strike *sua sponte* parts of Detective Hansen's testimony. Defendant acknowledges that his claims of error are not preserved but asks us to exercise our discretion to review them as plain error.

Plain error review requires us to first determine whether the error is plain, and second, whether to exercise our discretion to consider the error. ORAP 5.45; *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). For an error to be plain error, it must be, among other things, obvious and not reasonably in dispute. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

It is not "obvious" that Hansen's testimony constituted vouching. The prosecutor asked Hansen how the investigation into the incident involving the two victims began. Hansen explained that he had received a tip from a deputy who was part of the Douglas Interagency Narcotics Team (DINT) and that that tip led him to call one of the victims, P, on the phone. Hansen was asked if the phone conversation was intended to be a thorough interview, to which Hansen responded, "[a]bsolutely not." The prosecutor then asked Hansen to further explain that response. Hansen responded:

> "So the information was limited. And essentially, the reason for my phone call is to, for one, establish that there's an incident that's occurred. And then for two, *to make sure whoever the person is that's reporting that to the deputy is being legitimate or is a legitimate person and not something that's a third party hearsay thing or something*. And then also, to get kind of a baseline of the story, if it's something

that the Sheriff's Office, as the deputies need to handle or it's something that the DINT Team needs to handle, or another unit. If, say if it occurred like in Lane County, that would be an, you know, an agency in Lane County would need to come in with that. So that was my reasoning for the phone call."

(Emphasis added.)

Additionally, the prosecutor asked Hansen to "describe what occurred on August 28th of 2014, regarding the Winchester Storage." Hansen responded that he and another detective drove there to look for "specific information" and "any surveillance footage involving [defendant] or individuals involved in the investigation." Hansen explained that he was looking for footage from July 13, 2014, but that he ultimately obtained footage relevant to the investigation from July 12, 2014. The following exchange then occurred:

"Q. [Prosecutor] Did you participate in, how did you participate in finding [the footage] and, and realizing that it was what you were essentially, that it was pertinent to your investigation once you found some footage?

"A. [Hansen] *Well, the information that we had appeared to be obviously truthful and honest and we were following up on that.* And so it was a relative date. And so just like anything, we, I didn't observe anything consistent with the information that I had or the investigation on that date. Therefore, we started checking the day before and then we would obviously check the day after. And then we would kind of sequence that within reason to see if it was a couple of days before or a couple of days after. And while doing that is when we found surveillance that was consistent with the information that we had or were looking for on the video."

(Emphasis added.)

Defendant contends that the italicized portions above constituted impermissible vouching, but it is not obvious that that is the case. "Vouching refers to the expression of one's personal opinion about the credibility of a witness." *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019) (internal quotation marks omitted). Thus, a witness cannot make "a direct comment, or one that is tantamount to a direct

comment," on the credibility of another witness's trial or pretrial statements. *State v. Black*, 364 Or 579, 585, 437 P3d 1121 (2019).

The first part of Hansen's testimony came in response to a question asking Hansen to clarify why his initial phone call with P was not intended to be a thorough interview. Viewed in context, his testimony does not appear to be aimed at bolstering statements that P made; instead, his testimony was aimed at clarifying his purpose for contacting P in the first place. Similarly, it is not readily apparent that Hansen's testimony—that the information that his team had obtained "appeared to be obviously truthful and honest"—constitutes vouching. At that point in his testimony, Hansen had referenced multiple investigations and sources of information, and it is not clear what or who the source of the referenced "information" was; it appears that Hansen was offering an explanation for why he decided to review footage from multiple days at the storage facility. We thus cannot say that it is "obvious" that Hansen's testimony bolstered the credibility of any identifiable witness. Therefore, the trial court did not plainly err when it did not strike it on its own initiative. *See State v. Murphy*, 319 Or App 330, 335-36, 510 P3d 269 (2022) (no plain error if testimony was ambiguous as to whether the witness's testimony constituted vouching).

*Nonunanimous jury instruction*: In his eighth assignment of error, defendant contends that the trial court committed plain error when it instructed the jury that it could convict him based on nonunanimous verdicts because the instruction constituted "structural error." Defendant acknowledges that his assignment of error is foreclosed by *State v. Flores Ramos*, 367 Or 292, 478 P3d 515 (2020), and we agree.

Conviction for delivery of methamphetamine reversed and remanded for entry of a conviction for attempted delivery of methamphetamine; remanded for resentencing; otherwise affirmed.